Tom E. ALSTON, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 18750.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 22, 1965.

Decided May 6, 1965.

Burger, Circuit Judge, dissented in part.

See also D.C., 343 F.2d 345.

Mr. George H. Shapiro, Washington, D. C., with whom Mr. Harry M. Plotkin, Washington, D. C (both appointed by this court), was on the brief, for appellant.

Mr. John R. Kramer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and William C. Weitzel, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Mr. Jerome Nelson, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and BURGER and McGOWAN, Circuit Judges.

BAZELON, Chief Judge.

Appellant was convicted of manslaughter. The principal evidence was appellant's confession made at the police station after arrest but prior to a magistrate's hearing. Judge McGowan and I hold for different reasons that the confession was obtained in violation of Rule 5(a), FED.R.CRIM.P.

According to police testimony, appellant was arrested at 5:15 a.m., on February 22, 1964, and arrived at police headquarters, with his wife, at 5:30 a.m. Appellant's wife then sat in the Homicide Squad office while appellant was taken into an adjoining room where police questioned him "for at the most five minutes." During this questioning, appellant "stated he didn't know anything about [the offense] or words to that effect." Appellant was then permitted to speak briefly to his wife, after which he returned to the police and confessed the crime.

In my view, the questioning violated Rule 5(a) because the arresting officers failed to take appellant before a committing magistrate "as quickly as possible." Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Appellant's confession was not given at the "threshold" in response to the initial questioning by police.[1] Although it does not clearly appear how long appellant denied guilt,[2] it is clear that the questioning lasted for at least "five minutes." This is ample time to enter numerous denials. The police questioned "for the production of evidence." Greenwell v. United States, 119 U.S.App. D.C. 43, 47, 336 F.2d 962, 966 (1964). The delay "was utilized to obtain a confession by secret police interrogation

* * *. [A] confession so obtained is not 'spontaneous' within the Mitchell decision, and it is not admissible under Mallory." Spriggs v. United States, 118 U.S.App.D.C. 248, 251, 335 F.2d 283, 286 (1964); Greenwell v. United States, supra; Queen v. United States, 118 U.S. App.D.C. 262, 335 F.2d 297 (1964).

There is dispute in the record regarding whether appellant was warned by police of his right to remain silent before or after he confessed. But "[i]t is of little consequence that the officer says he advised [appellant] he need make no statement and if he did it would be used against him. Under the law [appellant] was entitled to be taken to a magistrate for public advice by the magistrate as to his rights, including his right to counsel with an opportunity to obtain counsel." Spriggs v. United States, 118 U.S. App.D.C. at 250, 335 F.2d at 285. Even if police had warned appellant of his right to remain silent, such warning may well be meaningless in the coercive milieu of secret police interrogation. "A basic purpose of Rule 5(a), F.R.Cr.P., is to make certain that a person arrested is advised *by a judicial officer* of his constitutional right[s] * * *." Greenwell v. United States, 119 U.S.App.D.C. at 47, 336 F.2d at 966 (emphasis in original). See Queen v. United States, supra.

The conviction is reversed and the cause remanded for new trial.

So ordered.

McGOWAN, Circuit Judge.

Although the matter is not free from doubt, I read the record in this case as affirmatively showing from police testimony that appellant was not, prior to

---

1. Compare Naples v. United States, 113 U.S.App.D.C. 281, 307 F.2d 618 (1962).

2. Appellant testified that he was questioned for more than five minutes, that he was not permitted to speak with his wife during the questioning and that he had requested counsel. Moreover, he testified that police threatened him with violence if he did not confess and that he knew police had earlier beaten his broth-

er until the latter incriminated appellant. Appellant's brother testified in support of this allegation. Police testimony contradicted all these allegations. "One purpose of the *Mallory* doctrine was to eliminate swearing contests between police and defendant as to what each said and did, by commanding that the defendant be promptly presented." Greenwell v. United States, 119 U.S.App.D.C. 43, 49, 336 F.2d 962, 968 (1964).

his interrogation, informed of his right to remain silent or of the fact that such answers as he chose to give might be used against him at his trial. The testimony seems to be most consistent with the supposition that such warning as was given came only after appellant had admitted his guilt and as a part of the formalities incident to the reduction of that confession to writing. For myself, this is a decisive consideration on the particular record before us, and causes me to regard the post-arrest history of this case as falling short of the requirements of Rule 5(a), FED.R.CRIM.P.

There are, in the Supreme Court's opinion in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356 (1957), certain verbal formulations and elucidations of the purposes and terms of Rule 5(a) which make it possible to advance a rational argument to the effect that no responses to questions asked between arrest and appearance before a magistrate may be used as evidence. However, the prevailing assumption seems to be, in this court as elsewhere, that this literalness in the reading of *Mallory* is an excessive exaltation of opinion over decision, and that, absent a further direct admonition from the Supreme Court that there can be no questioning whatsoever, its earlier opinion in Mitchell v. United States, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944), continues to have vitality and provides the warrant for the admissibility of so-called threshold confessions.

■ Thus, I approach *Mallory* issues on the assumption that Rule 5(a) leaves some room for the putting of questions to arrestees prior to their presentation to a committing magistrate. Its dimensions are, to put it mildly, far from exact; and the language of *Mallory* at least must be taken as foreshortening them quite substantially. It seems inevitable that judges at both the District Court and Court of Appeals levels, lacking the final say and working in a precedential atmosphere of this degree of imprecision, will vary in their fitting of the facts of particular cases into these indistinct molds. Therefore, an individual judge may largely, and properly, be responsive to the signals emitted by the record as to the atmosphere in which, and the attitude with which, a post-arrest interrogation was carried on.

It has been argued with considerable force that there are advantages to the prisoner in being accorded an opportunity to tell his version of what happened. He may have an alibi which, immediately checked out, may dispense altogether with the necessity for holding him further. Where the ultimate reliance is upon self-defense, the telling of the story to the police promptly after the event may go far towards persuading the jury to believe that it was not fabricated long after the fact. These considerations have merit, but they presume a purpose on the part of the interrogator not limited to the elicitation only of a damaging admission, and they suggest also that the prisoner should, before he decides to respond, have at least the basic information as to his right to remain silent and the use to which his answers may be put. An interrogator who consciously withholds this information is not likely, in my estimation, to pursue his inquiries with the breadth of purpose and the sensitivity to the objectives of Rule 5(a) which these justifications for limited post-arrest interrogation assume. This is not to say that the mere giving of the warning by the police will in every case assure the admissibility of admissions forthcoming thereafter. Rule 5(a) embodies a strong policy in favor of judicial warnings in the course of an appearance in open court before an independent magistrate; and that preference is not to be satisfied solely by non-judicial warnings. The proof of the latter in any case still leaves the frequently thorny problem of gauging the reasonableness of the delay under the facts of the particular case. But where the Government's own evidence establishes, as I take the case to be here, that no timely warning was given after arrest, the need to pursue further the inquiry into reasonableness is not insistent.

The period of time consumed by an interrogation may well be less significant than the spirit in which it is conducted. The time here was, at least in the prosecution's submission, quite brief. But time is a relative concept, and the interrogator who does not warn perhaps measures it differently from the one who does. My vote to reverse in this case is, thus, premised upon my own reading of the record as showing undisputedly the omission of a timely warning. This hard fact stands inescapably in the way of my having the requisite assurance that the delay here involved fell within such leeway as may reasonably be thought to be afforded by Rule 5(a).

BURGER, Circuit Judge (dissenting).

■ I agree with Judge McGOWAN's position that neither Rule 5(a) nor the *Mallory* case prohibits all interrogation of persons in custody; I also agree that a fixed police practice of giving a warning promptly and before questioning would eliminate many of the difficult problems. But I would affirm the convictions because the record satisfies me that Appellant received a timely warning of his right to silence. When asked "What time did that oral statement end?" Officer Boyd responded: "Well, he just made a brief statement and he was advised again of his constitutional rights regarding making a statement, and * * arrangements were made to take this typewritten statement." The use of the word "again" means nothing if it does not mean that Appellant had been similarly warned *before* he confessed orally.

Various members of this court have often stressed the critical importance of the plight of an arrested person confessing without access to friends or relatives; here the police allowed Appellant to have a private discussion with his wife after which he immediately related the details of the crime orally and repeated them later in a written confession which he signed. His wife was present throughout the entire process.

I would affirm the conviction.