**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Pedro ALVAREZ–SANCHEZ,
Defendant–Appellant.**

**No. 89–50060.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1990.

Decided Sept. 15, 1992.

Carol A. Klauschie, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Robert L. Brosio and Michael W. Fitzgerald, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before D.W. NELSON and REINHARDT, Circuit Judges, and PRICE,* Senior District Judge.

REINHARDT, Circuit Judge:

The defendant, Pedro Alvarez–Sanchez, was convicted after a jury trial of possession of counterfeit government obligations in violation of 18 U.S.C. § 472. During the trial, the government introduced in evidence a confession obtained while the defendant was in custody. The defendant had moved to suppress his confession on the ground that it was inadmissible under 18 U.S.C. § 3501 due to the delay between his arrest and arraignment. The district court denied the defendant's motion, and he appeals that denial. We review de novo the district court's decision to admit the confession. *See United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1048 (9th Cir. 1990); *United States v. Wilson,* 838 F.2d 1081, 1085–86 (9th Cir.1988). We reverse and remand.

## I

The facts, as found by the district court in its denial of the defendant's suppression motion, are relatively simple. On Friday,

---

* The Honorable Edward Dean Price, Senior District Judge for the Eastern District of California, sitting by designation.

August 5, 1988, Alvarez–Sanchez was arrested by Los Angeles Sheriff's deputies on narcotics charges during the execution of a search warrant on his residence. During the search, the deputies recovered $2,260 in counterfeit money; the Secret Service was notified. Although the state never pursued any narcotics or other prosecution against Alvarez–Sanchez, he remained in state custody throughout the weekend. On Monday, August 8, 1988, while still in state custody, Alvarez–Sanchez was interviewed by federal agents, one of whom was apparently fluent in Spanish. After agreeing to waive his *Miranda* rights, Alvarez–Sanchez confessed to knowing possession of the counterfeit money. Later that afternoon, the federal agents took custody of the defendant, and the next morning, Tuesday, August 9, he was arraigned before a federal magistrate.

## II

The defendant argues that his confession was inadmissible because it was obtained during a period of unreasonable prearraignment delay. Rule 5(a) of the Federal Rules of Criminal Procedure requires that an arrested person be arraigned before a magistrate "without unnecessary delay." The right to a speedy arraignment codified in Rule 5(a) has been recognized to serve at least three important interests; it: (1) "protect[s] the citizen from a deprivation of liberty as a result of an unlawful arrest by requiring that the Government establish probable cause," (2) "effectuate[s] and implement[s] the citizen's constitutional rights by insuring that a person arrested is informed by a judicial officer" of those rights, and (3) "minimize[s] the temptation and opportunity to obtain confessions as a result of coercion, threats, or unlawful inducements." 113 Cong.Rec. 36,067 (1967); *see also McNabb v. United States,* 318 U.S. 332, 343, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943) ("The purpose of this impressively pervasive requirement of criminal procedure [that of prompt arraignment] is plain.... The awful instruments of the criminal law cannot be entrusted to a single functionary."). Alvarez–Sanchez's case presents us with the problem of determining the circumstances under which the failure to arraign an arrestee within a reasonable time should result in the suppression of his confession.

Nearly fifty years ago, the Supreme Court determined that one appropriate remedy for violations of Rule 5(a) is to suppress confessions obtained during an unnecessary delay in arraignment. *See McNabb,* 318 U.S. at 341, 63 S.Ct. at 613. In a line of decisions culminating in *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Supreme Court adopted a general exclusionary rule that rendered inadmissible all confessions obtained during a detention in violation of Rule 5(a). This rule was not as severe as it seemed, however, as not all delays in arraignment violate Rule 5(a)—only "unnecessary delays." As long as the delay was reasonable, it did not violate Rule 5(a). *See, e.g., Muldrow v. United States,* 281 F.2d 903, 905 (9th Cir.1960); *Williams v. United States,* 273 F.2d 781, 798 (9th Cir. 1959), *cert. denied,* 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868 (1960). Suppression was required only "when the federal officers cannot justify their failure to promptly bring the accused before a committing magistrate, or when the federal officers delay arraignment in order to obtain evidence from the accused." *Cote v. United States,* 357 F.2d 789, 794 (9th Cir.), *cert. denied,* 385 U.S. 883, 87 S.Ct. 173, 17 L.Ed.2d 110 (1966); *see also Smith v. United States,* 390 F.2d 401, 403 (9th Cir.1968). The rule was clear, however, with regard to delays deliberately incurred in order to allow investigating officers time to interrogate the accused—any confession obtained would have to be suppressed. *See Upshaw v. United States,* 335 U.S. 410, 414, 69 S.Ct. 170, 172, 93 L.Ed. 100 (1948).

The continued vitality of the *McNabb-Mallory* remedy for Rule 5(a) violations was made uncertain, however, when in 1968 Congress enacted statutory provisions regarding the admissibility of confessions in federal criminal prosecutions, which provisions are codified at 18 U.S.C. § 3501 and

the text of which is set out in the margin.[1] One of the purposes of this enactment was to limit the *McNabb–Mallory* rule by allowing certain pre-arraignment confessions to be admitted notwithstanding the presence of a Rule 5(a) violation. *See United States v. Halbert*, 436 F.2d 1226, 1231 (9th Cir. 1970). Unfortunately, the text of § 3501 is confusing and has given rise to uncertainty and disagreements among the circuits over the proper application of the provision. *See United States v. Perez*, 733 F.2d 1026, 1034 (2d Cir.1984) (discreetly describing interpretation of the act as "somewhat murky"). The degree to which the operation of the *McNabb–Mallory* rule has been curtailed is unquestionably *not* clear from the plain language of the statute.

■ Two sections of § 3501, sections (a) and (c), appear to address the role of pre-arraignment delay in determining the admissibility of confessions obtained during such delay.[2] The most elaborate, and pertinent, is § 3501(c). That section states that a confession obtained during a pre-arraignment detention "shall not be inadmissible solely because of delay in [arraignment] if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention." The clear effect of this provision is to create a six-hour "safe harbor" during which a confession will not be excludable on the basis of the *McNabb–Mallory* rule. The section also provides that the permissible time for arraignment is extended "in any case in which the delay in

1. (a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

2. In fact, a third section, § 3501(b), also addresses delay in arraignment. Section (b) states that a court "shall take into consideration ... the time elapsing between arrest and arraignment." However, the primary purpose of the section appears to be to aid courts in making voluntariness determinations under section (a).

[arraignment] is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer." Section 3501(c) is designed to allow the *McNabb–Mallory* rule to operate only when the delay in arraignment exceeds the greater of six hours or the time deemed reasonable by the court in light of the available means of transportation and the distance to the nearest magistrate. *See Perez,* 733 F.2d at 1031. Another way of putting it is that § 3501(c) modified the right to speedy arraignments so that delays of less than six hours or delays that are necessary in light of the logistics involved should be considered reasonable *per se,* but left unaltered the *McNabb–Mallory* requirement that all confessions given during an *unreasonable* delay in arraignment should be suppressed.

■ The other section that appears to affect the *McNabb–Mallory* rule is § 3501(a). This section states that "[i]f the trial judge determines that the confession was voluntarily made it shall be admitted in evidence." If, as this language suggests, the section renders the admissibility of a confession dependent only on its voluntariness, then the *McNabb–Mallory* rule is eliminated entirely. Although a prolonged detention *prior to a confession* may weaken a person's will and thereby render a confession involuntary, delay in *arraignment* (which includes both pre- and post-confession delay) does not necessarily affect the voluntariness with which a confession is given. Further, because involuntary confessions are rendered inadmissible by the Constitution regardless of any additional Rule 5(a) violation, *see, e.g., Blackburn v. Alabama,* 361 U.S. 199, 206–07, 80 S.Ct. 274, 279–80, 4 L.Ed.2d 242 (1960), *McNabb–Mallory* would be purely superfluous. In short, § 3501(a) literally construed would make delay in arraignment that violates Rule 5(a) irrelevant to the admissibility of a confession.

Section 3501 is one of the many statutes, however, which provide strong evidence of the truth of Judge Learned Hand's simple aphorism that "[t]here is no surer way to misread any document than to read it literally." *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944) (Hand, J., concurring), *aff'd,* 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945); *see also United States v. Monia,* 317 U.S. 424, 431, 63 S.Ct. 409, 412, 87 L.Ed. 376 (1943) (Frankfurter, J., dissenting) ("The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification."). The difficulty with construing § 3501(a) literally—aside from the obvious problem that it would leave violations of speedy arraignment rights remediless—is that to do so would create a clear conflict with § 3501(c) and would render the latter section meaningless. According to section (c), a court is forbidden to suppress a confession solely on the basis of pre-arraignment delay *only* when the confession is given within six hours of arrest or when the delay in arraignment is due to the distance to the nearest magistrate. But a literal reading of section (a) forbids a court to suppress a confession solely on the basis of pre-arraignment delay under *all* circumstances. As the Second Circuit has noted, such a construction of section (a) "reads subsection (c) out of the statute." *Perez,* 733 F.2d at 1031; *see also United States v. Erving,* 388 F.Supp. 1011, 1016 (W.D.Wis. 1975).

■ Courts must not make a fetish of construing statutes in a literal fashion. Our role is not that of super-grammarian obsessed with the plain meaning of language but rather that of perceptive diviner of congressional intent. *See Mt. Graham Red Squirrel v. Madigan,* 954 F.2d 1441, 1453 (9th Cir.1992). In such a role, if possible, "effect shall be given to every clause and part of a statute." *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932). Thus, the Supreme Court has held that a court should reject the literal interpretation of a section of an enactment when that interpretation would render a different section meaningless. *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 250, 105 S.Ct. 2587, 2595, 86 L.Ed.2d 168 (1985). Accordingly, we reject a literal interpretation of § 3501(a)—in light of the

provisions of § 3501(c), there must be circumstances in which delay in arraignment will require suppression of a confession regardless of the voluntariness of the confession. *See Perez,* 733 F.2d at 1032; *United States v. Manuel,* 706 F.2d 908, 913 (9th Cir.1983) ("Section 3501(c), by implication, provides that unreasonable pre-arraignment delay can provide the sole basis for a finding of involuntariness, if the delay exceeds six hours."). The next question, of course, is—what circumstances?

We begin our analysis of the question by reviewing the approaches to § 3501 adopted by other circuits. Although all the opinions we have reviewed consider pre-arraignment delay in determining the admissibility of confessions, the methods by which the circuits perform this function can be divided into two distinct categories. One category involves constructions that attempt to harmonize sections (a) and (c) by expanding the meaning of the term "voluntary" as used in section (a) to include consideration of a factor unrelated to free will—specifically, pre-arraignment delay. The other category involves constructions that recognize that sections (a) and (c) were addressed to different matters—the former to concerns regarding the confessor's free will and the implementation of *Miranda,* and the latter to concerns regarding delay in arraignment and the implementation of *McNabb–Mallory.* While the former approach understandably tends to create confusion regarding the purpose of the two sections, the latter permits them to be analyzed separately and coherently.

The most primitive version of the first approach—the "expanded voluntariness" category—has been adopted by the Sixth Circuit, which resolved the conflict between sections (a) and (c) by holding simply that "[unnecessary delay] is one of five relevant factors which the trial judge must consider in determining voluntariness." *United States v. Mayes,* 552 F.2d 729, 734 (6th Cir.1977). The resolution is puzzling, however, because the court also stated that "unnecessary delay, in and of itself, is not sufficient to justify suppression of an otherwise voluntary confession under 18 U.S.C. § 3501(a)." *Id.* As explained

above, the absolute bar on suppressions based solely on delays in arraignment, as adopted by the Sixth Circuit, conflicts with section (c)'s command that a confession not be suppressed "solely because of delay in [arraignment]" if the confession falls within the six hour safe harbor. The Sixth Circuit's approach does, however, have the superficial benefit of apparent obedience to § 3501(a)'s command that voluntariness be the touchstone of admissibility under that section.

Yet, this obedience is nothing more than apparent; it. makes "voluntariness" the touchstone only by distorting the meaning of that term. As we have already noted, the delay in arraignment (as opposed to the delay during the pre-confession period) is irrelevant to the determination whether the confession was given with a free will. Worse still, in assessing "voluntariness," *Mayes* insists upon a consideration only of *unnecessary* delay. The reasons for the delay—whether the delay was necessary or unnecessary—have no bearing, of course, on the confessor's state of mind. *See Perez,* 733 F.2d at 1031 ("[T]he government's excuses for the delay have no logical or legal relevance to the defendant's voluntariness [in giving the confession]."); *United States v. Shoemaker,* 542 F.2d 561, 563 (10th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976).

Notwithstanding the provisions of section (b), the problem with expanding the definition of voluntariness to include delay in arraignment is that it provides no guidance in determining how the delay is to be weighed: to order a court to consider unnecessary delay in arraignment in determining the voluntariness of a confession is to command it to engage in a wholly non-rational exercise. Because delay in arraignment (or at least the post-confession portion of that delay) does not affect the confessor's free will, a court must make explicit the purpose other than protecting that free will that is being served by suppression, at least if it is to engage in a principled analysis. When a court examines *pre-arraignment* delay and continues to insist that its determination is based

solely on voluntariness, its explanation can serve only to confuse its readers and to mislead future courts. In sum, expanding the definition of "voluntary" seems to be nothing but a tautologic sleight-of-hand that hides the true basis for the suppression decision, Rule 5(a).[3]

A more sophisticated version of the first mode of analysis has been adopted by the Seventh Circuit. In *United States v. Gaines*, 555 F.2d 618 (7th Cir.1977), that circuit avoided the pitfalls of the Sixth Circuit's approach by recognizing both that there must be some circumstances in which delay in arraignment alone justifies suppression and that such suppressions must be grounded on the interests incorporated in Rule 5(a), not on the interest in preventing coerced confessions, *see id.* at 623–24. The court did not, however, hold that all unreasonable delays in arraignment (outside the safe harbor period) require suppression of the confession (the *McNabb–Mallory* rule), but rather held that whether delay warranted suppression depended upon "the exercise of such judicial discretion depend[ing] upon a congeries of factors, including such elements as the deterrent purpose of the exclusionary rule, the importance of judicial integrity, and the likelihood that admission of the evidence would encourage violations of the Fourth Amendment." *Id.* at 623–24. The Seventh Circuit thus appears to have attempted to reconcile sections (a) and (c) through a compromise under which a Rule 5(a) violation alone may render a confession inadmissible, but does not necessarily do so.

The alternative approach to § 3501 recognizes that, while sections (a) and (c) are facially incompatible, they can best be understood by construing section (a) to address concerns regarding a confessor's free will and section (c) to address concerns regarding delay in arraignment. Such a construction is most consistent with the legislative history, which demonstrates: (1) that section (a) was enacted in light of congressional concern over the Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that confessions should be suppressed in certain circumstances without finding "the defendants' statements to have been involuntary in traditional terms," *id.* at 457, 86 S.Ct. at 1618. *See United States v. Robinson*, 142 U.S.App. D.C. 43, 439 F.2d 553, 562–63 (1970); *id.*, 439 F.2d at 574 n. 18 (McGowan, J., dissenting); S.Rep. (Judiciary Committee) No. 1097, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2123–40, 2282,[4] and (2) that section (c) was appended to the statute to address the *McNabb–Mallory* rule, *see* 114 Cong.Rec. 14,184–86. Given this history, and the fact that pre-arraignment delay is the exclusive subject of section (c), the approach concludes that it is *that* section that incorporates Congress' intent with regard to the admission of confessions made during an unreasonable delay in arraignment. As the Second Circuit has stated it,

> the addition of subsection (c) on the Senate floor effectively codified a limited *McNabb–Mallory* rule. Stated another way, section 3501 legislatively overruled the *McNabb–Mallory* rule only to the extent of (1) unreasonable pre-arraignment, pre-confession delays of less than six hours and (2) reasonable delays in excess of six hours.

*Perez*, 733 F.2d at 1035. Accordingly, a confession outside of the section (c) safe

---

**3.** We can best explain the nature of the "expanded voluntariness" approach by quoting from Lewis Carroll:

> "When I use a word," Humpty Dumpty said in a rather scornful tone, "it means just what I choose it to mean—neither more nor less."
> "The question is," said Alice, "whether you can make words mean so many different things."
> "The question is," said Humpty Dumpty, "which is to be master—that's all."

Lewis Carroll, The Annotated Alice: Alice's Adventures in Wonderland & Through the Looking Glass 269 (Martin Gardner ed., Bramhall House 1960) (1871); *see generally* Bix, *Michael Moore's Realist Approach to Law*, 140 U.Penn.L.Rev. 1293 (1992).

**4.** Congress' attempt to address *Miranda* has been held not to overrule that decision, as such a result would be of questionable constitutionality, *see, e.g., Robinson*, 439 F.2d at 574 n. 18 (McGowan, J., dissenting), but rather to guide the voluntariness inquiry under certain circumstances, *see, e.g.,* 439 F.2d at 562 & n. 11.

harbor is subject to the *McNabb–Mallory* rule, which mandates exclusion if the delay in arraignment is unreasonable. This approach is recommended by most commentators, *see, e.g.,* 3 J. Wigmore, Evidence § 862(a), at 623 (Chadbourn rev. 1970) (stating that § 3501 retains the *McNabb–Mallory* rule with regard to confessions obtained outside of the section (c) safe harbor); 8 J. Moore, Moore's Federal Practice ¶ 5.02[2], at 5–13—5–15 (2d ed. 1992) (same), and has been adopted by the Second and District of Columbia Circuits, *see Perez,* 733 F.2d at 1035; *United States v. Robinson,* 142 U.S.App.D.C. 43, 439 F.2d 553, 563–64 (1970).

The leading Ninth Circuit decision regarding pre-arraignment delay is *United States v. Halbert,* 436 F.2d 1226 (9th Cir. 1970), which bears some similarities to the Sixth Circuit's "expanded-voluntariness" approach. In *Halbert,* we stated that non-safe harbor confessions "are admissible if voluntary, although the trial judge under subsection 3501(b) may take into account delay in arraignment in his determination of voluntariness." *Id.* at 1237. *Halbert* differed from the Sixth Circuit's approach in one important aspect, however. Although it attempted to incorporate pre-arraignment delay within a "voluntariness" determination, it recognized that "[d]iscretion remains in the trial judge, under subsection 3501(b), to exclude confessions as involuntary solely because of delay in arraignment, during which a confession is given, that exceeds six hours." *Id.* at 1234. Our difference with the Sixth Circuit on this point sharpened as we reiterated our position on numerous occasions. *See, e.g., United States v. Fouche,* 776 F.2d 1398, 1406 (9th Cir.1985) (stating that "the district court has the authority to exclude the [non-safe harbor] confession as involuntary, and may do so solely because of the pre-arraignment delay"); *Manuel,* 706 F.2d at 913 ("Section 3501(c), by implication, provides that unreasonable pre-arraignment delay can provide the sole basis for a finding of involuntariness, if the delay exceeds six hours."). Thus, in a series of cases we have made it clear that suppression can be based on concerns other than the confessor's free will, although we did not say so explicitly. *Cf. United States v. Edwards,* 539 F.2d 689, 691 (9th Cir.) (finding that a confession was "voluntary" because, *inter alia,* "the delay in arraignment was caused solely by a shortage of personnel and vehicles to transport the suspect a distance of 125 miles to Tucson, the situs of the nearest available magistrate"), *cert. denied,* 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976).

In *United States v. Wilson,* 838 F.2d 1081 (9th Cir.1988), we solidified our approach by making explicit the purposes for which delay in arraignment is considered in a § 3501 suppression hearing. In *Wilson,* we reversed the district court and ordered suppression of a confession obtained during a lengthy pre-arraignment delay, a delay extended in part in order to allow police officers time to interrogate the defendant. In finding the confession inadmissible, we did not state that the confessor's will had been overcome, but rather ordered suppression because

[t]he purposes embedded in § 3501—to prevent confessions extracted due to prolonged pre-arraignment detention and interrogation, and *to supervise the processing of defendants from as early a point in the criminal process as is practicable*—are frustrated when the arraignment of a defendant who has been in custody for more than six hours is further delayed for no purpose other than to allow further interrogation of the defendant. If we countenance the police procedure followed here, we give officers a free hand to postpone any arraignment until a confession is obtained. That was not the legislative intent behind § 3501.

*Id.* at 1087 (emphasis added). *Wilson* thus makes explicit that a confession may be suppressed in order to serve the prophylactic purpose of discouraging officers from unnecessarily delaying arraignments (i.e., from violating Rule 5(a)) as well as to prevent admission of an involuntary confession. It also serves to bring us closest to

the approach used by the Seventh Circuit.[5]

Interestingly, despite our long line of cases following *Halbert*, we have never expressly chosen between an approach that requires suppression of non-safe harbor confessions if the court determines the delay to have been unreasonable (*McNabb–Mallory*) and an approach that allows admission of some non-safe harbor confessions given during an unreasonable delay in arraignment if the court believes that, on balance, suppression is not warranted. Although in *Halbert* we stated that the statute does not require that all confessions falling outside the safe harbor should be suppressed, *see* 436 F.2d at 1232–33, that statement does not resolve the question. *McNabb–Mallory* and Rule 5(a) only require the suppression of non-safe harbor confessions given during *unreasonable* delays in arraignment, not all non-safe harbor confessions.[6] Therefore, *Halbert* is not dispositive of the question whether the *McNabb–Mallory* bright line rule is applicable to non-safe harbor confessions.[7] Nevertheless, it is fair to state that most of our cases are more consistent with the Seventh Circuit balancing test than with the Second Circuit *McNabb–Mallory* bright line approach. *Compare Gaines*, 555 F.2d at 623 (asserting that its approach was consistent with *Halbert) with Perez* at 733

F.2d 1033–34 (declining to follow *Halbert* but asserting that "the Ninth Circuit itself has not adhered consistently to the *Halbert* view").

There are at least two cases in which we followed the *McNabb–Mallory* approach. *See United States v. Sotoj–Lopez*, 603 F.2d 789 (9th Cir.1979) (per curiam); *United States v. Stage*, 464 F.2d 1057 (9th Cir. 1972) (per curiam). In those cases, we suppressed non-safe harbor confessions on the basis of *McNabb–Mallory* without discussing *Halbert*. *See Sotoj–Lopez*, 603 F.2d at 790–91; *Stage*, 464 F.2d at 1057–58. On the basis of these post-*Halbert* cases, it might be possible to conclude either that the law of the Ninth Circuit is that *McNabb–Mallory* applies to non-safe harbor confessions or that we have an intra-circuit conflict. We need not resolve the matter, however, for we conclude that the confession before us must be excluded under either approach; thus resolution of any possible conflict is unnecessary. *See United States v. Whitehead*, 896 F.2d 432, 434 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 342, 112 L.Ed.2d 306 (1990); *United States v. Sotelo–Murillo*, 887 F.2d 176, 179 (9th Cir.1989). In addition, we note that the conflict may be more apparent than real. Under *Sotoj–Lopez*, a court exam-

**5.** The dissent recites a long list of successors to *Halbert* in an unsuccessful attempt to demonstrate that in the past we have reviewed arraignment delays in excess of six hours exclusively for involuntariness, and not for unreasonableness. As we note elsewhere, *United States v. Edwards*, 539 F.2d 689 (9th Cir.1976), *United States v. Manuel*, 706 F.2d 908 (9th Cir.1983), and *United States v. Stage*, 464 F.2d 1057 (9th Cir.1972) support the approach taken in *Wilson*. See discussion at (pp. 1403, 1404) *supra*. *United States v. Mandley*, 502 F.2d 1103 (9th Cir.1974), the only other case cited by the dissent, confined its analysis of § 3501 to quoting *Halbert*, and shed no light on the latter's use of the term "voluntariness". Moreover, while questioning our faithfulness to prior Ninth Circuit precedent, the dissent does not attempt to explain how its approach is consistent with *United States v. Sotoj–Lopez*, 603 F.2d 789 (9th Cir. 1979) (per curiam) (discussed below) and *Stage*.

**6.** In this regard, it is important to note that under § 3501(c), not all reasonable delays *extend* the safe harbor, only those relating to diffi-

culty transporting the defendant to the nearest magistrate, *see Wilson*, 838 F.2d at 1085 (Section 3501(c) "excuses delays for more than six hours *only* when such delay 'is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.' "). However, some delays that do not come within the safe harbor may be justified based on legitimate reasons other than difficulty in transportation; in those instances, the delay is deemed reasonable and there is no violation of Rule 5(a). *See, e.g., Evans v. United States*, 325 F.2d 596, 603–04 (8th Cir.1963) (holding that Rule 5(a) was not violated by a 12 hour delay in arraignment incurred in order to search for stolen money), *cert. denied*, 377 U.S. 968, 84 S.Ct. 1649, 12 L.Ed.2d 738 (1964); *see also supra* at 1398 (discussing test of reasonableness under *McNabb–Mallory* ). Confessions obtained during such periods of "reasonable" delay are not excludible under *McNabb–Mallory*.

**7.** Indeed, it is interesting that we were careful in *Halbert* to note that the delay did *not* violate Rule 5(a). *See* 436 F.2d at 1230.

ines the delay in arraignment (if it falls outside of the safe harbor) to determine if it is unreasonable; only if the delay is unreasonable does it exclude the confession. Under *Halbert*, a court considers the delay in arraignment (again assuming that it falls outside the safe harbor) to determine whether or not it is the sort of delay that warrants suppression in light of a number of factors, including the prophylactic purpose "embedded" in § 3501. *See Wilson*, 838 F.2d at 1086. A strong argument can be made that the second inquiry also hinges on whether the delay is reasonable—that *Halbert–Wilson* simply provides an explicit set of criteria for determining reasonableness. In any event, as we have stated, we will not resolve this question as we find the result in this case to be the same whether we rely on *Halbert* and *Wilson* or on *Sotoj–Lopez*.

## III

■ In evaluating the admissibility of Alvarez–Sanchez's confession, we note that it did not occur during the § 3501(c) safe harbor period. It was obtained far longer than six hours after his arrest. Alvarez–Sanchez was taken into local custody on Friday, did not confess to federal authorities until Monday afternoon, and was not arraigned until Tuesday morning. Thus, the combined delay well exceeds the § 3501(c) six-hour safe harbor. *See United States v. Fouche*, 776 F.2d 1398, 1406 (9th Cir.1985) ("pre-arraignment delay caused by local and federal officials should be considered cumulatively under section 3501(c)").[8] We find no reason for extending the safe harbor period as there was no claim of difficulty in transporting the de-

fendant to the nearest magistrate. Thus, Alvarez–Sanchez's confession clearly falls outside the safe harbor, a point that the government has not contested.

## IV

■ We now turn to the question of whether the confession should be excluded. Under the *McNabb–Mallory* approach followed in *Sotoj–Lopez*, the answer is clear. We need only look to one part of the delay in order to reach our conclusion. Alvarez–Sanchez's arraignment was delayed from Monday afternoon to Tuesday morning specifically to provide federal officers with time to interrogate him. Such a delay is one of the most patent violations of Rule 5(a) and suppression is required on the basis of that delay alone—irrespective of the lengthy delay that occurred between Friday and Monday. *See Upshaw v. United States*, 335 U.S. 410, 414, 69 S.Ct. 170, 172, 93 L.Ed. 100 (1948); *Ginoza v. United States*, 279 F.2d 616, 621 (9th Cir.1960) (en banc) (requiring suppression of a confession obtained during a delay "designed primarily for the purpose of enabling the officers to secure or to obtain the [confession]").

Under *Halbert*, we reach the same result. *Halbert* expressly provides that in some cases confessions should be suppressed solely on the basis of pre-arraignment delay. This is one of those cases. Because § 3501 has "embedded" within it the goal of speedy arraignments, *see Wilson*, 838 F.2d at 1087, the avoidable and deliberate delay engaged in here, after a long period of custody, for the sole purpose of interrogating the arrestee requires suppression of the confession.[9] Under the cir-

8. The government suggests that *Halbert* stands for the proposition that pre-arraignment delay by local and federal officials should be aggregated only when the defendant can show evidence of collusion between local and federal authorities. *Halbert* stands for no such proposition. Indeed, the court suggests the opposite rule, *see* 436 F.2d at 1231 ("It can be argued that § 3501 removed the necessity of considering 'collusive working agreements.'"), and in any case expressly refrains from deciding the question, *see id.* at 1231, 1232 n. 4. *Fouche*, however, does reach the issue and makes clear that pre-arraignment delay should always be aggregated.

9. The government argues that finding the delay unreasonable here will establish a duty to arrest a defendant as soon as probable cause is established, in contradiction to *Hoffa v. United States*, 385 U.S. 293, 309–10, 87 S.Ct. 408, 417–18, 17 L.Ed.2d 374 (1966). *Hoffa*, however, rejected a duty to arrest *and take into custody* a suspect once probable cause is established. It did not address the duty to arraign speedily a defendant *who is already in custody* and therefore a subject of the concerns expressed in 18 U.S.C. § 3501 and Fed.R.Crim.P. 5. The government does not deny the existence of a duty to

cumstances presented here, allowing police officers to interrogate an arrestee rather than to arraign him would encourage violations of Rule 5(a)—because it would permit the prosecution to profit by its wilful violations. As we stated in *Wilson*, "[i]f we countenance the police procedure followed here, we give officers a free hand to postpone any arraignment until a confession is obtained." *Id.* Accordingly, Alvarez–Sanchez's confession must be suppressed.[10]

Since there is no contention that admitting the confession was harmless, *cf. Arizona v. Fulminante*, — U.S. —, —, 111 S.Ct. 1246, 1266–67, 113 L.Ed.2d 302 (1991) (Kennedy, J., concurring) (suggesting that, because of "the indelible impact a full confession may have on the trier of fact," a confession is seldom, if ever, harmless), and the evidence, including the erroneously admitted confession, was sufficient to support the verdict, the judgment of the district court must be vacated, the order denying the defendant's motion to suppress his confession must be reversed, and the case must be remanded to the district court for further proceedings in conformity with this opinion.

VACATED, REVERSED, AND RE-MANDED FOR FURTHER PROCEEDINGS.

PRICE, Senior District Judge, dissenting:

I respectfully dissent from the majority opinion in this matter.

After conviction by trial, the defendant appeals the order of the district court that denied his motion to suppress statements made to federal officers obtained in violation of 18 U.S.C. § 3501. The facts as found and relied upon by the district court are as follows.

FACTS AND PROCEDURAL HISTORY

Defendant Pedro Alvarez–Sanchez was arrested by Los Angeles Sheriff's Deputies on narcotics charges on August 5, 1988, during the execution of a search warrant on defendant's residence. It is not clear whether the Los Angeles Sheriff's Department was told that the Los Angeles District Attorney's Office would decline prosecution (Declaration of Los Angeles Sheriff's Department Deputy Abraham Hernandez), or if the case was never presented to the District Attorney for a prosecutorial decision (Los Angeles Sheriff's Department Detective John McCann). However, because counterfeit money totaling $2,260.00 was recovered from defendant's residence, the Secret Service was notified on Monday, August 8, 1988.

At about 11:30 a.m. on August 8, 1988, defendant, while still in state police custody, was interviewed by United States Secret Service Special Agents Lipscomb and Bozzuto, and Los Angeles Sheriff's Department Deputy Abraham Hernandez, the latter being fluent in Spanish. Defendant was advised of, and agreed to waive, his *Miranda* rights, and confessed to knowingly possessing counterfeit money. Defen-

arraign speedily a detained suspect. *See* Fed. R.Crim.P. 5 ("An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate."). It only denies the duty to arraign speedily a suspect who is in state custody. *Fouche*, as has already been explained, rejects the government's position.

**10.** Finally, we note that even were we to apply all the factors set forth in § 3501(b), we would conclude that the confession should be excluded. The first factor, delay in arraignment, weighs heavily in favor of suppression as the delay, from Friday to Tuesday, was almost four days in length. The fifth factor also weighs in favor of suppression because Alvarez–Sanchez

was not represented by counsel. The second factor, whether the defendant understood the nature of the charges against him, does not weigh on either side, as the district court made no findings in this regard, although even if we assume Alvarez–Sanchez did understand, our result would be unaltered. The third and fourth factors weigh slightly in favor of admission because Alvarez–Sanchez waived his *Miranda* rights; however, the weight of these factors is greatly diminished because the waiver occurred only after he had been detained for over three days. *See Wilson*, 838 F.2d at 1087. Were we to balance all these factors, along with the unreasonableness of the delay in arraignment, we would conclude that suppression of the confession is required.

dant was taken into custody by the special agents in the afternoon of August 8, 1988.

After returning to the United States Courthouse in Los Angeles, California, the arresting officers proceeded to put the defendant through the necessary booking procedures. By the time they had completed these procedures, they were told that the magistrate's calendar was filled, and that the defendant could not be brought before a magistrate on August 8, 1988. Defendant was brought before the magistrate on the morning of August 9, 1988. An indictment was subsequently returned against the defendant charging him with possession of counterfeit money with the intent to defraud in violation of 18 U.S.C. § 472. He was convicted.

We are mandated to review the claimed violation of 18 U.S.C. § 3501 *de novo. United States v. Wilson,* 838 F.2d 1081, 1083 (9th Cir.1988).

## DISCUSSION

At the time this case arose, Title 18 of the United States Code § 3501 read as follows:

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (3) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. *The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.*

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily

by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

18 U.S.C. § 3501 (emphasis added).[1]

This section was passed to ameliorate the effect of *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The legislative history reveals the congressional view of the effect that *Mallory* was having on criminal prosecutions:

> Voluntary confessions have been admissible in evidence since the early days of our Republic. These inculpatory statements have long been recognized as strong and convincing evidence—often called the best evidence of guilt. In *Mallory v. United States*, 77 S.Ct. 1356, 354 U.S. 449 [1 L.Ed.2d 1479] (1957), the U.S. Supreme Court declared inadmissible voluntary confessions made during a period of unnecessary delay between the time of arrest and the time the suspect is taken before a committing magistrate. The case of *Alston v. United States* [121 U.S.App.D.C. 66], 348 F.2d 72 (D.C.Cir. 1965), is indicative of the illogical and unrealistic court decisions resulting from the application of the *Mallory* rule. The Honorable Alexander Holtzoff, U.S. district judge for the District of Columbia, testified before the subcommittee as follows:
>
> > On the other hand, the District of Columbia circuit takes an extreme position and practically holds that an arrested person must be taken to a magistrate immediately, even in the dead of night, subject to necessary time to make a record of the arrest, fingerprinting the defendant, and similar mechanical processes. This is illustrated by the case of *Alston v. United States*, 121 U.S.App.D.C. 66, 348 F.2d 72, in which the conviction of a self-confessed murderer whose guilt was not in dispute, was reversed. The facts are startling. The defendant was brought to police headquarters at 4:30 a.m. He was questioned by the police for about 5 minutes and then immediately confessed on the advice of his wife who had accompanied him with the police. It was held by the court of appeals that the arresting officers should have taken the defendant before a committing magistrate immediately and that the questioning, even for 5 minutes, was not permissible—the conviction was reversed. It is my understanding that the indictment thereafter was dismissed on the motion of the U.S. attorney in view of the fact that he felt that without the confession he did not have sufficient evidence to convict (Hearings, at 260–61).
>
> The rigid, mechanical exclusion of an otherwise voluntary and competent confession is a very high price to pay for a "constable's blunder."

S.Rpt. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 2112, 2124.

In *United States v. Halbert*, 436 F.2d 1226 (9th Cir.1970), this court held that a voluntary confession given more than six hours after the defendant was taken into custody by state officer was admissible.

The pertinent facts were as follows:

1. Defendant Halbert was arrested by state officers in the afternoon of November 11, 1969. He was booked in the Bowie, Arizona jail.

2. On November 12, between 9 and 10 a.m., state officials notified the FBI of the arrests and possible Dyer Act violation. The FBI received confirmation that the car in which the defendant had been arrested had been stolen in California.

3. On November 13, 1969, an FBI agent interviewed Halbert and obtained his confession at about 3:26 p.m.

4. The United States Attorney requested the FBI to determine if local authorities

---

1. The bill as originally passed, referred to "commissioners." The word "magistrate" was inserted wherever the word "commissioner" originally appeared.

in Los Angeles would prosecute the defendant. They declined and so notified the Arizona FBI agents on November 13, 1969.

5. On Friday, November 14, 1969, FBI agent Bogley was assigned other routine duties and did not present the matter to the U.S. Attorney's Office in Arizona until Monday, November 17, 1969. A complaint was filed, and a warrant was issued. Halbert first appeared before the U.S. Magistrate on November 17, 1969.

The appellate panel's summary continued:

> Halbert moved to suppress the confession given in the interview on November 13 with Agent Bagley on the grounds that it was obtained in violation of (1) the Fifth amendment and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), (2) Rule 5 of the Federal Rules of Criminal Procedure and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and (3) 18 U.S.C. § 3501.
>
> The district court granted the motion. The district court found (1) that a proper Miranda warning had been given, (2) that the confession was voluntary under 18 U.S.C. § 3501(b), but (3) that the delay between the state arrest and the confession and delay in holding a committing hearing was not reasonable under 18 U.S.C. § 3501(c). The precise finding on the latter issue was:
>
> > "Not only was this confession not obtained within six hours of the arrest or detention, but the delay in holding defendant's committing hearing cannot be excused in light of 'the means of transportation and the distance to be traveled to the nearest such available magistrate or other officer.'"

*Id.* at 1226.

The *Halbert* panel held that 18 U.S.C. § 3501(c) does not automatically render *all* confessions made after 6 hours of detention inadmissible:

> Thus, subsection 3501(b) instructs the trial judge to consider delay in arraignment in determining the voluntariness of a confession but leaves him with a great deal of discretion on what to make of it. In this context, subsection 3501(c), in pro-viding that confessions shall not be inadmissible solely because of delay in arraignment, if otherwise voluntary and given within six hours of arrest, merely removes some of the discretion given to the trial judge under subsection 3501(b) in determining voluntariness. Discretion remains in the trial judge, under subsection 3501(b), to exclude confessions as involuntary solely because of delay in arraignment, during which a confession is given, that exceeds six hours.
>
> This construction is consistent with the language of section 3501 and a scheme under which the admissibility of confessions turns on voluntariness. The integration, however, is not perfect. The effect of the proviso of subsection 3501(c) is to remove discretion from the trial judge by requiring him to admit a confession, otherwise voluntary, given more than six hours of arrest during a delay in arraignment if the delay was reasonable considering problems in transporting the defendant to the magistrate.
>
> One must conclude then that subsection 3501(c) was intended to make voluntary confessions within six hours after arrest, clearly admissible without reference to delay. The provision as to confessions made more than six hours after arrest pinpointed an excuse for delay, caused by transportation and distance difficulties. After the express statements in § 3501(a) that the confession "shall be admissible in evidence if voluntarily given," and the statement in subsection 3501(b) that in determining the voluntariness the court shall take into account "the time elapsing between arrest and arraignment of the defendant making confession, if it was made after arrest and before arraignment," we cannot say that Congress intended by the provision in subsection 3501(c) to undo all it had done with the preceding subsections. The legislative history which we review hereafter clearly confirms our view, and we think it would be error to reach a different interpretation.

*Id.* at 1234.

The *Halbert* panel then discussed the legislative history and concluded that it

supported their interpretation. The *Halbert* panel concluded:

> We conclude that confessions given more than six hours after arrest during a delay in arraignment are admissible if voluntary, although the trial judge under subsection 3501(b) may take into account delay in arraignment in his determination of voluntariness. The district court here found Halbert's confession voluntary under subsection 3501(b). This conclusion of the district court was correct. The confession was given two days after Halbert's arrest and he was, as discussed above, given the *Miranda* warnings. There was no evidence that he was subjected to oppressive police practices prior to his confession or that the delay between arrest and confession contributed in any way to the confession.
>
> The delay *after* the confession and before his federal arraignment obviously had no effect on the prior confession and would not render it inadmissible. United States v. Mitchell (1944), 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, United States v. Campbell (9th Cir.1970), 431 F.2d 97, note 2.

*Id.* at 1237.

An examination of the cases which have involved an application of 18 U.S.C. § 3501 since *Halbert* is equally instructive.

In *United States v. Stage*, 464 F.2d 1057 (9th Cir.1972), the defendant was arrested on August 20, 1970. Federal agents began questioning him soon after his arrest and gave Stage his *Miranda* warning on August 20, 1970. Stage indicated that he did not want to make any statements until he talked to an attorney. No attorney was ever furnished. On August 25, 1970, after a continued interrogation by state and federal officers, Stage filed a "waiver of rights" and confessed to a Dyer Act violation. His conviction was reversed and the case was remanded with instructions to dismiss the indictment.[2]

In *United States v. Mandley*, 502 F.2d 1103 (9th Cir.1974), the defendant was arrested by state officers on December 26, 1973 for a parole violation. Wanted by the FBI, a federal hold was placed upon him. When his parole hearing occurred on January 7, 1974, the disposition of the state parole charge was postponed until disposition of the federal charges. On January 19, 1974, federal agents interviewed Mandley. He signed a waiver of his *Miranda* rights and confessed, following a two hour interview. Mandley was taken before a magistrate on January 14, 1974, nineteen days after his initial arrest, and seven days after the state hearing was suspended. The Ninth Circuit panel held that the confession was admissible, stating:

> Prior to enactment of 18 U.S.C. § 3501 appellant's contentions could well have had merit under Rule 5, Federal Rules of Criminal Procedure, and Supreme Court decisions in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 37 L.Ed. 819 (1943), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Section 3501 has, however, substantially changed the law.

*United States v. Mandley*, 502 F.2d at 1105.

In *United States v. Edwards*, 539 F.2d 689 (9th Cir.1976), a rape occurred on an Indian reservation in Arizona on November 1, 1975. After a preliminary investigation, the United States Attorney authorized prosecution of the defendant. The FBI notified the Bureau of Indian Affairs that it could make the arrest. After his arrest on November 4, 1975, the defendant signed a waiver of his rights and an admission was obtained approximately 7 hours after being taken into custody and before being taken before a magistrate. The panel affirmed the trial court's finding that the confession was voluntary.

In *United States v. Manuel*, 706 F.2d 908 (9th Cir.1983), the following events occurred. On August 3, 1981, the body of one Howard was found on an Arizona road. On August 4, 1981, Manuel and two other suspects were arrested. All three were

---

**2.** One member of the panel dissented, but agreed that the confession of Stage was not admissible.

heavily intoxicated, and a decision was made to allow the defendants to sleep off the effects of the alcohol. On August 5, 1981, Manuel was questioned by FBI Agent Fish, starting shortly after 8:00 a.m. After being instructed as to his *Miranda* rights, Manuel confessed his role in the killing of Howard. Following this interview, the United States Attorney authorized prosecution of Manuel, but did not authorize arrest. The Indian tribe declined to prosecute, and on November 21, 1981, Manuel was indicted. The appellate panel affirmed the trial court's determination that the confession was admissible at trial, stating:

> We find nothing in the record that would exclude Manuel's confession. The delay between his arrest and interrogation was reasonable under the circumstances. Uncontradicted testimony showed that Manuel was very heavily intoxicated when arrested on the afternoon of August 4. Questioning him in such a condition would have been much more likely to produce an unfair and involuntary confession than the procedure actually used. The tribal police provided Manuel with a meal and with sleeping accommodations so that he could regain sobriety. Although we do not sanction delay of any kind in bringing an accused person before a magistrate, delay engendered by such humanitarian motives can hardly be deemed unreasonable per se. *See United States v. Isom,* 588 F.2d 858, 862 (2d Cir.1978); *United States v. Bear Killer,* 534 F.2d 1253, 1257 (8th Cir.), *cert. denied* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976). Under the circumstances of this case, the delay did not render the appellant's confession involuntary.

> Apart from the delay, appellant does not seriously contend that the incriminating statements he made on the morning of August 5 were involuntary. The district court specifically found the confession to be voluntary. We cannot say that this finding was incorrect; it was supported by evidence that FBI agent Fish carefully explained to Manuel his *Miranda* rights prior to beginning the questioning, which immediately elicited Manuel's confession. We find that the

district court properly applied the standard of 18 U.S.C. § 3501(b) to admit Manuel's confession, *see United States v. Mandley,* 502 F.2d 1103, 1105 (9th Cir. 1974); *Halbert,* 436 F.2d at 1237.

In *United States v. Wilson,* 838 F.2d 1081 (9th Cir.1988), the Navajo Tribal Police Department received a call on May 3, 1985 regarding an unconscious child at the Public Health Service Hospital. The child's mother told the Tribal Police her common law husband had spanked the child with a shoe. The FBI in Gallup, New Mexico was notified. The FBI instructed the Navajo police to get a written statement from the mother and to keep the FBI informed. Wilson was arrested by tribal officers later the same day. He was placed in solitary confinement and special security precautions were taken to monitor him frequently during his custody upon their arrival at the tribal jail.

Sgt. Hawkins told the FBI agents that Wilson was to be arraigned on the tribal charges that day. He further stated that if the court started taking arraignments during their interview, he would make arrangements to take Wilson before the judge himself after the agents had finished the interview.

FBI Agents Babcock and Coffman started their interview sometime between 1:00 and 1:30 p.m. on May 10, 1985. The court's summary of this interview is as follows:

> Agents Babcock and Coffman spoke with Wilson for more than two hours. Preliminary questioning revealed that Wilson had only a seventh grade education and had been arrested only on tribal or drinking offenses. Agent Babcock then read Wilson his *Miranda* rights, and asked Wilson to read them to himself, then aloud. Wilson declined to have his rights read to him in the Navajo language. He said he understood his rights and would talk to the agents about his son. The agents questioned Wilson about Melvin for approximately 1 hour and 42 minutes. Wilson thrice denied abusing his son. Agent Babcock told Wilson that he was lying and that it would be easier for him if he "got it off his chest." Babcock then asked Wilson whether he had been a victim of child

abuse himself. At this point, Wilson broke down and started crying. He then confessed to having abused Melvin.

The FBI concluded its questioning at approximately 4:00 p.m., by which time the tribal court, which met upstairs in the same building, had completed the day's arraignments. Because he was being questioned, Wilson missed the regularly scheduled arraignment calendar. After Wilson confessed, Sgt. Hawkins took him up to the judge's chambers to be arraigned specially.

*United States v. Wilson,* 838 F.2d at 1083.

The *Wilson* panel reversed the trial court's determination that Wilson's confession was voluntary stating:

The government's reliance on the waiver of *Miranda* rights becomes weaker as the period of pre-arraignment detention increases. If unreasonable delay in excess of six hours can itself form the basis for a finding of involuntariness, that same delay may also suggest involuntariness of the *Miranda* waiver. *See Frazier v. United States,* [136 U.S.App.D.C. 180], 419 F.2d 1161, 1167 (D.C.Cir.1969) (noting that the government's "already 'heavy burden' of showing effective waiver" increases with the delay between arrest and confession).

Given our holding in *Fouche* and the long delay which undermines a valid waiver of Wilson's *Miranda* rights, we cannot say that Wilson's apparent waiver of his rights to remain silent and to have an attorney present will overcome the other factors which support a finding of involuntariness. The purpose embedded in § 3501—to prevent confessions extracted due to prolonged pre-arraignment detention and interrogation, and to supervise the procession of defendants from as early a point in the criminal process as is practicable—are frustrated when the arraignment of a defendant who has been in custody for more than six hours is further delayed for no purpose other than to allow further interrogation for the defendant. If we countenance the police procedure followed here, we given officers a free hand to postpone any arraignment until a confessions obtained. That was not the legislative intent beyond § 3501. It was error to deny the suppression motion.

*Id.* at 1087.

The *Halbert* analysis, and the cases that have followed make it clear that 18 U.S.C. § 3501(a), (b), and (c) should be construed together. The failure to bring a defendant before a magistrate within six hours of his or her arrest does not, in and of itself, render a confession given in the interim inadmissible. The Court's inquiry should center on all of the facts and circumstances surrounding the confession to determine if it was voluntarily given.

In the case before the Court, there is no evidence that any delay in bringing Alvarez before the magistrate was used to lengthen the interrogation of this defendant. Further, the defendant knew the nature of the charges pending against him.

As the defendant was being booked, and not in response to any specified question, he asked, "is this about the counterfeit money?" The defendant admitted possession of the counterfeit money shortly after the beginning of the interrogation by Special Agents Lipscomb and Bozzuto of the Secret Service.

I would affirm the ruling of the trial court denying defendant's motion to suppress, and would affirm defendant's conviction.