UNITED STATES of America
v.
Augusto da Silva VALENTE.
Crim. No. 57–14.

United States District Court
D. Massachusetts.

Oct. 16, 1957.

On Motion for Rehearing Nov. 5, 1957.

Anthony Julian, U. S. Atty., George H. Lewald, Asst. U. S. Atty., Boston, Mass., for the United States.

Michael D. Dunne, Springfield, Mass., for Valente.

ALDRICH, District Judge.

The defendant, following a verdict of guilty of falsely claiming to be a United States citizen, 18 U.S.C.A. § 911, moves for a new trial. The only ground alleged for possible consideration is that the court "erred in excluding evidence offered by the defendant of improper arrest, detention and the denial of due process of law and Constitutional guarantees." Actually, no evidence was either offered, or excluded along such lines. At the hearing on the motion, however, defendant complained of certain evidence that was admitted, which I will now consider.

Briefly, the case was as follows. An Immigration investigator testified that in September, 1956, in the course of a routine foray, he encountered the defendant, noted that he spoke poor English, asked for identification, and was given a name, shown a birth certificate, and told that he was an American citizen. Two months later he encountered defendant again. This time defendant gave a different name. (Neither of these proved to be his true one.) He did not, on this occasion, claim to be an American citizen. The investigator arrested him forthwith without warrant, pursuant to provisions of Section 287(a) (2) of the Immigration and Nationality Act, 8 U.S.C.A. § 1357.

The arrest took place on November 8, at Springfield, Massachusetts. Either that night or the next morning the defendant was brought to Immigration headquarters in Boston, and on November 9, at an hour which does not appear, was interrogated before an officer through an interpreter. Prior to the interrogation the defendant was not taken before any committing officer, or offered bail. He was informed that the Immigration Service wished to question him concerning his status; that any statements must be voluntary and might be used by the government in any deportation or criminal proceedings, and was asked whether he was willing to make such a voluntary statement. He answered in the affirmative. The ensuing interrogation was lengthy, and extends over ten typewritten pages. In it the defendant admitted that he was an alien, improperly in the United States. According to government witnesses he was also asked the following questions, and gave the following answers:

72. "Q. Tell me in your own words what took place when I first saw you about two of three months ago? A. You showed me identification that you were an immigration officer and you asked me questions about a Tony Paulo, you called me by name, Rebelo and you asked me if I was a citizen and I told you yes, that I was a citizen of the United States and that I was born in Ludlow.

73. "Q. Did you show me anything to prove that you were a citizen of the United States and born in Ludlow? A. Yes, I showed you a birth certificate of Americo Rebelo, born in Ludlow, Mass."

After the completion of this statement the defendant was served with a notice of arrest in deportation proceedings and released on bail. Thereafter he was indicted for his present offense, and the deportation proceedings were suspended.

At the trial the defendant admitted that he was an alien, denied that he had stated in September that he was a United States citizen, and denied admitting in November having done so. He did not claim coercion or abuse, but that he or the interpreter must have misunderstood. The November testimony, while in a sense merely cumulative, was obviously highly prejudicial, and if erroneously admitted I believe there should be a new trial.

The ordinary rule applicable to criminal arrests is that the defendant

must be brought before a committing magistrate without unnecessary delay. Fed.Rules Crim.Proc. rule 5(a), 18 U.S. C.A. Statements obtained after a reasonable time has elapsed without compliance with this rule are not admissible in criminal proceedings in spite of having been voluntary. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479. Section 1357(a) (2), constitutionally, Tsimounis v. Holland, D.C. E.D.Pa., 132 F.Supp. 754, affirmed 3 Cir., 228 F.2d 907, changes this rule by permitting the alien to be brought "without unnecessary delay for examination before an officer of the Service having authority to examine aliens *as to their right to enter or remain in the United States.*" (Ital. supp.) It does not relax the rule for any other purpose. If the arrest is "for felonies" the usual obligation to proceed without delay before a committing magistrate applies. § 1357 (a) (4). The mere fact that the officer could properly examine as to status did not give him a roving commission. His examination of the defendant on the subject of a felony without attempting to comply with Rule 5(a), and the introduction of the resultant confession at a subsequent criminal trial, was a flagrant disregard of defendant's rights. The verdict of the jury is set aside and a new trial ordered.

### Opinion on Motion for Rehearing

The government takes exception to my earlier opinion on the ground that the Immigration Office had a right to arrest the defendant without warrant under subsection (a) (2), § 1357, and interrogate him thereunder, and that if the defendant in the course of that examination chose voluntarily to admit something else, that was his affair. It points out that he was not arrested for a felony under subsection (a) (4). All this I assumed before.

It seems to me that one only has to state the government's full position, and it answers itself. Before the defendant was arrested the government knew he had committed the offense for which he is now being tried (if he ever did commit it), because the alleged statement had been made to the same government employee who later arrested him. Of greater importance, at the time he was arrested the defendant immediately admitted that he was an alien, made no claim that he was properly in the country, and agreed that he should be deported. No lengthy examination was needed, so far as subsection (2) was concerned.[1] If the detention under subsection (2), and interrogation to obtain an admission in aid of a prosecution for a subsection (4) offense for which he could not have been detained, was not a deliberate subterfuge, the effect was the same. The result is not to be countenanced.

The government cites Paquet v. United States, 9 Cir., 236 F.2d 203, 205, certiorari denied 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161, where the court said that the "mere fact the confession was made while in the custody of the Bureau of Immigration and Naturalization investigator does not render it inadmissible." I do not quarrel with that as an abstract proposition. In the case at bar there was much more.

Previous order to stand.

---

1. The government's present contention, that it was necessary to go over past history in connection with a subsection (2) examination, "for the protection of the defendant," so as to prevent his improper deporting due to some mistake (he being, perhaps, really a citizen) is far-fetched. See, e. g., question 87:

"Do you admit showing me a birth certificate to which you were in no way entitled to show that you were a citizen of the United States and do you also admit that you told me you were a citizen of the United States?" A. "Yes, I do." This is a singular example of paternalistic solicitude for the defendant.