UNITED STATES of America,
Plaintiff-Appellee,

v.

Edit SOTOJ–LOPEZ,
Defendant-Appellant.

No. 79–1316.

United States Court of Appeals,
Ninth Circuit.

Sept. 4, 1979.

Mark E. Griffin, Asst. Federal Public Defender, (argued), Portland, Or., for defendant-appellant.

William M. Youngman, Portland, Or., for plaintiff-appellee.

Before HUFSTEDLER, TRASK and SNEED, Circuit Judges.

PER CURIAM:

Sotoj appeals from his conviction for assaulting an immigration officer with a

---

deadly weapon. He contends that his conviction should be reversed because (1) the Government unreasonably delayed in bringing him before a magistrate in violation of *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942) and *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); and (2) he was prejudiced by the erroneous admission of irrelevant evidence. We reverse for *McNabb-Mallory* error.

On December 5, 1978, three agents of the Immigration and Naturalization Service conducted a search of the Valley Packers onion shed in Adrian, Oregon, seeking illegal aliens. Officer Nygaard identified himself, and asked Sotoj where he was born. Sotoj answered "Me married." Repetition of the same question led to the same answer. Thereupon, Sotoj attempted to flee. A scuffle ensued during which Sotoj nicked Nygaard's chin with a knife and Nygaard wounded Sotoj. The sole witnesses to the altercation were Sotoj and Nygaard. When the two men were first observed by another worker at the shed, Nygaard had subdued Sotoj and was striking him with a flashlight or a stick. Nygaard arrested Sotoj for a violation of the Immigration and Nationality Act and purportedly arrested him for assault with a deadly weapon as well.

Sotoj was taken to a hospital to receive treatment for his wounds, and he was thereafter transported to the Immigration office in Boise, Idaho. After he was interviewed, he was taken to the Ada County Jail, also in Boise. The Immigration office is approximately two and one-half miles from the federal courthouse. The Ada County Jail is about three miles from the federal courthouse.

The following morning, December 6, 1978, an FBI agent, Ryan, interviewed Sotoj at the county jail. During the interview Sotoj denied that he had cut the immigration officer, but he admitted that he had fought with the officer. The interview was conducted through an interpreter. Sotoj was not brought before a magistrate until almost 18 hours after his inculpatory statements had been taken.

■ *Mallory v. United States, supra,* requires an arrested person to be taken before a judicial officer "as quickly as possible." Although the arrested person may be booked, "he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt. . . ." Although circumstances may justify a brief delay before a person is taken to a magistrate, "the delay must not be of a nature to give opportunity for the extraction of a confession." (354 U.S. at 454–55, 77 S.Ct. at 1359–1360.) Inculpatory statements obtained from the arrested person in violation of the *McNabb-Mallory* rule must be suppressed, and the district court's denial of the suppression motion was erroneous.

■ The Government necessarily concedes that the delay in taking Sotoj before a magistrate was unnecessary. It argues that the *McNabb-Mallory* rule does not apply because a person who has been arrested and is being held in custody pending a determination of his deportability does not have the right to be brought promptly before a magistrate. In support of this view, the Government cites 8 U.S.C. § 1252(b). Section 1252(b) describes the proceedings before a special inquiry officer to determine deportability, and that statute does not prescribe a right to be brought promptly before a federal officer. The first difficulty with the Government's argument is its reliance on the wrong statute. The statute specifically defining the treatment of aliens after arrest is 8 U.S.C. § 1357(a)(2), providing that, following a warrantless arrest of an alien by an INS agent, "the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States."

Nothing in section 1357(a)(2) purports to deprive an alien who is detained on a criminal charge, or against whom criminal charges are going to be lodged, in addition to any deportation proceedings that may be conducted against him, of his rights secured by Rule 5(a) of the Federal Rules of Crimi-

nal Procedure and the *McNabb-Mallory* rule. On the contrary, section 1357(a)(2) relaxed Rule 5(a) only for the examination of an alien's right to remain in the United States. Federal officers must comply with Rule 5(a) if the alien is being charged with a non-status offense. (*United States v. Valente,* 155 F.Supp. 577 (D.Mass.1957). *See also United States v. Casimiro-Benitez,* 533 F.2d 1121 (9th Cir. 1976).)

█ Sotoj also argues that the district court erred in admitting, over irrelevance objection, evidence that none of the other aliens who were arrested on December 5 resisted arrest or were struck by INS agents. The objection should have been sustained. The actions of other agents, or other aliens, or even Nygaard's action with respect to other persons had no probative value in establishing what either Sotoj or Nygaard did in their meeting with each other. We have no occasion to decide whether the erroneous admission of this evidence was prejudicial because we reverse on other grounds, and the error will not recur on retrial.

REVERSED.