**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Benigno PENA–CARRILLO,**
**Defendant–Appellant.**

No. 93–30322.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1994.

Decided Jan. 13, 1995.

Tonia L. Moro, Medford, OR, for defendant-appellant.

Frank Papagni, Jr., Asst. U.S. Atty., Eugene, OR, for plaintiff-appellee.

Before ALDISERT *, TANG and D.R. THOMPSON, Circuit Judges.

TANG, Senior Circuit Judge:

Benigno Pena–Carrillo entered a conditional plea of guilty to one count of illegal reentry, and was sentenced to the maximum of five years with a 3–year term of supervised release. He appeals the denial of his motion to dismiss the indictment against him because of alleged violations of the Speedy Trial Act. He also argues that the district court erred in applying the Sentencing Guidelines. We affirm his conviction and sentence.

I.

On March 5, 1993, federal law enforcement agents arrested Pena–Carrillo on charges of illegal reentry, in violation of 8 U.S.C. § 1326(b). On March 8, 1993 an Immigration Detainer was filed against him, and on March 17, 1993, a criminal complaint was filed against him, alleging illegal reentry into the United States. The district court held a preliminary hearing on March 25, 1993, and ordered that Pena–Carrillo be detained. The magistrate-judge set arraignment on an indictment, should one be returned, for April 19, 1993.

The government failed, however, to present Pena–Carrillo's case before the federal grand jury that met in Eugene, Oregon on April 14 and 15, 1993. The Assistant U.S. Attorney testified that the failure to present Pena–Carrillo's case to the grand jury was the result of his own negligence.

On April 19, 1993, Pena–Carrillo appeared before Magistrate–Judge John Coffin for ar-

---

* Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

raignment. Pena–Carrillo argued that the court should dismiss the case with prejudice because the Government had failed to indict him within the thirty-day time span required by 18 U.S.C. § 3161(b). Magistrate–Judge Coffin dismissed the complaint *without* prejudice. The court made no factual findings on whether the complaint should be dismissed with or without prejudice, and the record contains no indication that Magistrate–Judge Coffin heard argument on this issue. Magistrate Judge Coffin did inform Pena–Carrillo, however, that if he was subsequently indicted on the same charges, he would have the opportunity to present arguments on the issue of prejudice.

Although Pena–Carrillo was released from detention on the criminal complaint, the district court placed him in the custody of the INS pursuant to the Immigration Detainer filed on March 8, 1993. INS officials put Pena–Carrillo in civil detention for purposes of deportation. He remained in civil detention until April 28, 1993, when a federal grand jury returned an indictment against him. (The U.S. Attorney's Office had filed the indictment against Pena–Carrillo in Portland, Oregon rather than in Eugene, Oregon.)

On May 24, 1993, Pena–Carrillo filed a Motion to Dismiss the Indictment for Unnecessary Post–Arrest Delay in Presenting Charges and to Dismiss the Indictment on Speedy Trial Grounds. Pena–Carrillo argued that the indictment should be dismissed on the grounds that the delay between his original arrest and his indictment violated the Speedy Trial Act.

On June 7, 1993, the district court heard oral argument on Pena–Carrillo's Motion to Dismiss and ruled against Pena–Carrillo. The court then held an evidentiary hearing on June 14, 1993, to determine whether Pena–Carrillo was detained because of collusion or ruse between the INS and U.S. Attorney's office. Witnesses from the United States Marshall, INS, and U.S. Attorney's office testified that they did not intend to delay the speedy deportation of Pena–Carrillo in order to file criminal charges against him. The court again found against Pena–Carrillo.

On June 23, 1993, Pena–Carrillo entered a conditional plea of guilty to the charge of Illegal Reentry After a Felony Conviction, in violation of 8 U.S.C. § 1326(b)(1). On August 23, 1993, Pena–Carrillo received the maximum sentence of five years followed by a three-year term of supervised release. The court sentenced him according to the Presentence Report, which found appropriate a sixteen level increase of his base offense level under U.S.S.G. § 2L1.2 because of his prior conviction for an aggravated felony.

On appeal, Pena–Carrillo contends that the district court failed to provide a hearing and failed to justify its conclusions on the question of whether the original complaint against him should have been dismissed *with* prejudice rather than without prejudice. Therefore, he argues, his subsequent indictment and reprosecution were improper.

Pena–Carrillo contends further that the district court erred in denying his motion to dismiss the indictment against him. He argues that, to establish a violation of the Speedy Trial Act, he should *not* have to prove that the INS and prosecutors conspired to detain him civilly until they could bring criminal charges. He also argues that the district court clearly erred in finding that no such collusion and ruse existed.

Finally, Pena–Carrillo contends that the district court erred in imposing a five year sentence under U.S.S.G. § 2L1.2(b)(2). He argues that U.S.S.G. § 2L1.2(b)(2), which enhances the sentence for illegal reentry if the defendant has been convicted of an aggravated felony, should not have been applied.

II.

A. *Dismissal of Original Complaint Without Prejudice*

Pena–Carrillo's first argument is that the district court erred in failing to provide him with a hearing and to make the necessary findings on the question whether the original complaint, filed on March 17, 1993, should have been dismissed with prejudice rather than without prejudice. Because no hearing was conducted on this question, he argues, the subsequent indictment should have been

dismissed. We conclude that the first complaint was properly dismissed without prejudice and, therefore, that the district court properly refused to dismiss the subsequent indictment.

■ The district court's denial of a motion to dismiss for noncompliance with the Speedy Trial Act is reviewed *de novo. United States v. White,* 864 F.2d 660, 661 (9th Cir.1988). The Speedy Trial Act requires that federal authorities indict and bring to trial incarcerated defendants within a specified period of time. In this case, the Act requires the Government to return an indictment within 30 days of arrest. 18 U.S.C. § 3161(b).[1] If it fails to do so, the district court must dismiss the complaint. 18 U.S.C. § 3162(a)(1); *see United States v. Pollock,* 726 F.2d 1456, 1462 (9th Cir.1984) (remedy of dismissal of complaint is mandatory when the government fails to indict within the specified time period). In determining whether to dismiss with prejudice or without prejudice, the court must consider three factors: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a prosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1).

■ When making the determination whether a complaint should be dismissed with prejudice or without prejudice, the district court must conduct a hearing on notice, make factual findings, and apply these three factors. In *United States v. Taylor,* 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), the Supreme Court held that a district court abused its discretion when it dismissed with prejudice under the Speedy Trial Act, without explicitly applying the three factors prescribed by the statute. *Taylor* applies equally where the lower court dismisses *without* prejudice. The district court must make specific factual findings and apply the factors stated in the Speedy Trial Act before dismissing without prejudice. *United States v. White,* 864 F.2d 660, 661 (9th Cir.1988). In

*United States v. Delgado–Miranda,* 951 F.2d 1063 (9th Cir.1991), we further held that, under the Speedy Trial Act, the district court must give the defendant adequate notice of a hearing and afford the defendant an opportunity to be heard prior to dismissal without prejudice. *Id.* at 1064.

■ Here, when the original indictment was dismissed on April 19, 1993, Magistrate-Judge Coffin did not afford Pena–Carrillo the opportunity to be heard on the question whether his original complaint should have been dismissed without prejudice, as required by *Delgado–Miranda.* However, the district court conducted a hearing on June 7, 1993, concerning Pena–Carrillo's motion to dismiss for unnecessary post-arrest delay, and an evidentiary hearing on June 14, 1993, to determine whether Pena–Carrillo was detained because of collusion or ruse between the INS and the U.S. Attorney's Office. Pena–Carrillo had the opportunity to argue that the original complaint should have been dismissed with prejudice at these hearings.

Although the district court failed to make factual findings on the question of prejudice, as *White* requires, the record here is complete and allows us to make the necessary findings. Remand would be merely pro forma, and would serve no useful purpose.

■ Applying the three statutory factors, we conclude that the first complaint was correctly dismissed without prejudice. The first factor is the seriousness of the offense. Illegal reentry after felony conviction is a moderately serious offense. The second factor is the facts and circumstances leading to dismissal. Here, there is no evidence of purposeful wrongdoing on the part of the prosecutor. The failure to secure an indictment within 30 days was apparently inadvertent, and the U.S. Attorney's Office attempted to rectify this error by indicting Pena–Carrillo as soon as possible thereafter. The third and final factor is the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice.

---

1. Section 3161(b) provides:
   Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date

on which the individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b).

The purpose of deterring prosecutorial misconduct and delay would be little served by barring reprosecution in this case. Taking all three factors into account, we conclude that the district court correctly dismissed the original complaint without prejudice.

## B. *Successive Criminal and Civil Detention*

Pena–Carrillo next argues that the indictment should be dismissed, because his uninterrupted incarceration between March 5 (the date of arrest) and April 28 (the date the indictment issued) violated the Speedy Trial Act. We affirm the district court's conclusion that Pena–Carrillo's detention did not violate the Speedy Trial Act.

■ We review questions of law concerning the Speedy Trial Act *de novo,* while factual findings are reviewed for clear error. *United States v. Cepeda–Luna,* 989 F.2d 353, 354 (9th Cir.1993); *United States v. Nash,* 946 F.2d 679, 680 (9th Cir.1991). After being arrested on March 5, 1993, Pena–Carrillo remained in criminal detention until April 19, 1993, the date on which Magistrate–Judge Coffin dismissed the original complaint. Upon dismissal of the original complaint against Pena–Carrillo, the district court placed him in the custody of the INS, where he remained until the indictment was returned on April 28, 1993.

■ Pena–Carrillo argues that the district court erred in requiring him to produce evidence of collusion between INS and prosecutors. This argument is foreclosed by our decision in *Cepeda–Luna.* Charges should only be dismissed where prolonged civil detention is the result of collusion or ruse between prosecutors and the INS, designed to bypass the Speedy Trial Act. *Cepeda–Luna,* 989 F.2d at 354. In *Cepeda–Luna,* we held that the Speedy Trial Act's prohibitions were not triggered merely because the defendant was subject to successive civil and criminal detention.

■ Pena–Carrillo contends that, even if he is required to show collusion or ruse, the district court clearly erred in finding no such misconduct in his case. We disagree. The evidence cited by Pena–Carrillo provides neither direct nor indirect support for his contention that prosecutors conspired with INS to extend his detention until an indictment could be returned.

Pena–Carrillo argues that evidence of collusion exists in the fact that the Government hurriedly indicted him out of district. The Assistant U.S. Attorney acknowledged that his own negligence was responsible for the failure to file an indictment within 30 days of Pena–Carrillo's arrest. By taking the somewhat unusual step of indicting out of district in Portland rather than in Eugene, prosecutors ensured that the indictment would issue while Pena–Carrillo was still in civil custody. Yet this does not demonstrate that the prosecutor intended to evade the Speedy Trial Act—on the contrary, it suggests that, after his initial negligence, the prosecutor was attempting to bring the defendant to trial as quickly as possible.

The fact that criminal authorities knew of the pending immigration proceedings is not enough to demonstrate that officials conspired to evade the 30 day limit. *United States v. Orbino,* 981 F.2d 1035, 1036–37 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 256, 126 L.Ed.2d 208 (1993). There is no evidence that prosecutors and INS officials communicated between April 19 (the date the complaint was dismissed) and April 28 (the date that the INS agent was called to testify before the grand jury that later returned the indictment). The Assistant U.S. Attorney testified that he purposely avoided contacting INS during this period, in order to avoid even the appearance of collusion or ruse. The district court's finding that there was no collusion or ruse on the part of the Government is not clearly erroneous.

## C. *Sentencing Guidelines*

Pena–Carrillo pleaded guilty to illegal reentry after having been convicted of a felony. 8 U.S.C. § 1326(b)(1). He argues that the district court erred in enhancing his sentence under U.S.S.G. § 2L1.2(b)(2), which prescribes a sixteen level enhancement for deportees convicted of an *aggravated* felony who subsequently reenter.

■ We review the district court's legal interpretation of the Sentencing Guidelines *de novo. United States v. Blaize,* 959 F.2d 850, 851 (9th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992); *United States v. Uzelac,* 921 F.2d 204, 205 (9th Cir.1990). The application of the Sentencing Guidelines is also reviewed *de novo. United States v. Kohl,* 972 F.2d 294, 297 (9th Cir.1992).

■ We conclude that the district court correctly interpreted and applied the Guidelines. Title 8 of the United States Code, Section 1326(a), provides that any alien who "enters, attempts to enter, or is at any time found" in the United States after deportation faces imprisonment up to two years. Section 1326(b)(1) provides, however, that any deported alien found in the United States after being convicted of a felony, faces no more than five years. Section 1326(b)(2) provides a punishment of imprisonment for no more than fifteen years when the deported alien is found in the United States after being convicted of an *aggravated* felony.

Section 2L1.2 of the Sentencing Guideline applies to violations of 8 U.S.C. § 1326(a) and (b). Subsection (b)(1) requires a four level enhancement for deported aliens who were convicted of a felony prior to deportation. Subsection (b)(2) prescribes a sixteen level enhancement for deported aliens who were convicted of an aggravated felony prior to deportation. *See* U.S.S.G. § 1B1.2(b)(1) & (2).

Pena–Carrillo pleaded guilty to illegal entry after felony conviction, 8 U.S.C. § 1326(b)(1), and not to illegal entry after *aggravated* felony conviction, 8 U.S.C. § 1326(b)(2). Consequently, he argues, the district court should have sentenced him under U.S.S.G. § 2L1.2(b)(1) (enhancing sentence for felony conviction), rather than U.S.S.G. § 2L1.2(b)(2) (enhancing sentence for *aggravated* felony conviction). Pena–Carrillo contends that three separate offenses are stated in 8 U.S.C. § 1326(b)(1) and that the district court erred in applying the specific offense characteristics under the guideline section to enhance the applicable sentencing range by sixteen levels. Finally, he contends that the application of Section 2L1.2(b)(2) nullifies the benefit of his plea bargain by doubling his offense level.

Our decision in *United States v. Arias–Granados,* 941 F.2d 996 (9th Cir.1991), forecloses Pena–Carrillo's arguments. In *Arias–Granados,* the defendants were arrested while present in this country after deportation. *Id.* at 997. Both had previous felony convictions and pleaded guilty to one count of 8 U.S.C. § 1326(a), reentry after deportation. *Id.* Despite the fact that defendants were *not* convicted of reentry after felony conviction, the district court applied U.S.S.G. § 2L1.2(b)(1) to enhance their sentences for prior felony convictions. The court held that the four-level increase was appropriate because "the district court is required by the clear language of the Guidelines to consider the prior convictions in calculating appellant's sentences." *Id.* at 998. The court also observed that defendants still benefited from their pleas because the statutory maximum for the crime to which they plead reduced the sentencing range. *Id.*

Except for the fact that Pena–Carrillo pleaded guilty to § 1326(b)(1), rather than § 1326(a), this case presents the same situation as *Arias–Granados.* The clear language of the Sentencing Guidelines requires the sentencing court to increase the base offense by sixteen levels, if defendant was deported after conviction for an aggravated felony. Like Arias–Granados, Pena–Carrillo acknowledged the maximum sentence he could receive. Furthermore, Pena–Carrillo, like Arias–Granados, benefitted from his plea to the lesser charge of reentry after felony conviction (rather than reentry after aggravated felony conviction). The greater charge carries a maximum sentence of 15 years rather than 5 years. 8 U.S.C. § 1326(b)(2). Under the guidelines, he could have been sentenced to as many as 96 months, if convicted of illegal reentry after aggravated felony conviction.

In arguing that the aggravated felony should not be used as a sentencing enhancement factor, Pena–Carrillo relies on *United States v. Gonzalez–Medina,* 976 F.2d 570 (9th Cir.1992). Reliance on this case is unavailing. The *Gonzalez–Medina* court held that subsections 1326(a) and 1326(b)(1) de-

scribe different crimes with different elements and maximum sentences. *Gonzalez–Medina,* 976 F.2d at 572. Therefore, the prosecution was obligated to produce evidence of each element of 1326(b)(1) to secure a conviction. This case says nothing about what provisions of the Sentencing Guidelines apply, once a conviction is entered.[2]

In his reply brief, Pena–Carrillo relies principally on *Braxton v. United States,* 500 U.S. 344, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991). This case is also inapposite. Under *Braxton,* a court must apply the offense guideline section most applicable to the offense of conviction, unless the defendant's guilty plea contains a stipulation specifically establishing a more serious offense. *Id.* at 346, 111 S.Ct. at 1857. Pena–Carrillo was convicted of illegal reentry after felony conviction. The district court correctly applied U.S.S.G. § 2L1.2, the applicable guideline for violations of 8 U.S.C. § 1326(b)(1). The fact that this guideline takes into consideration conduct that is also an element of a greater offense is irrelevant. *Arias–Granados,* 941 F.2d at 998. The district court applied the correct section of the Sentencing Guidelines, as required by *Braxton.*

### III.

We affirm the district court's dismissal of the original complaint against Pena–Carrillo without prejudice, rather than with prejudice. We also affirm the district court's conclusion that Pena–Carrillo's rights under the Speedy Trial Act were not violated by his successive criminal incarceration and civil detention. Finally, we affirm the district court's interpretation and application of the Sentencing Guidelines.

**AFFIRMED.**

**2.** In fact, the court in *Gonzalez–Medina* explicitly distinguished the holding in *Arias–Granados* that a defendant who pleads guilty to illegal reentry under 1326(a) could still have his base level enhanced by virtue of a prior felony conviction. 976 F.2d at 572.