**UNITED STATES of America,**
**Plaintiff,**

v.

**Ernesto Jose ENCARNACION,**
**Defendant.**

**No. Crim. 99–33(SEC).**

United States District Court,
D. Puerto Rico.

June 22, 1999.

Thomas F. Klumper, U.S. Attorney's Office District of P.R., San Juan, P.R., for plaintiff.

Joseph C. Laws, Federal Public Defender, San Juan, Puerto Rico, for defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is a motion filed by defendant Ernesto Jose Encarnación to dismiss the indictment due to a violation of Federal Rule of Criminal Procedure 5(a). **(Docket # 16)**

**Factual Background**

On January 24, 1999, the defendant Ernesto Jose Encarnación a/k/a Victor Melo, ("Encarnación") arrived on American Airlines Flight No. 5411 at the Luis Muñoz Marín International Airport, in Carolina, Puerto Rico from Santo Domingo, Dominican Republic. Defendant Encarnación is a citizen of the Dominican Republic. While applying for admission into the United States, the defendant presented to the U.S. Immigration and Naturalization Service Inspectors a Dominican passport and an·Alien Registration Receipt Card (Form I–551). Upon review by the INS Inspectors, they determined that defendant Encarnación was an alien who had been previously arrested and deported from· the United States on June 6, 1996.

Defendant had been deported subsequent to his conviction for the commission of an aggravated felony to wit: criminal possession and sale of a controlled substance. Pursuant to that information, the INS detained defendant on January 24, 1999, the date of his arrival. On January 25, 1999, defendant Encarnación was interviewed by Senior INS Inspector, Fernando Ruz, to which defendant informed of his previous arrest and deportation.

On February 2, 1999, eight (8) days after Mr. Encarnación's detention, the Government brought him before Magistrate Judge Jesús A. Castellanos for an initial appearance. On February 5, 1999, the Magistrate held a preliminary hearing and found probable cause against defendant pursuant to 8 U.S.C. 1326(b)(2). On February 10, 1999, sixteen (16) days after his initial detention, a federal grand jury returned a one-count indictment against defendant charging him with a violation of 8 U.S.C. 1326(b)(2).

On April 5, 1999, defendant filed his motion to dismiss. In essence, he claims that he is entitled to a dismissal of the

criminal complaint with prejudice due to the failure to provide him with a "probable cause" determination within 48 hours of his arrest.

Rule 5(a) of the Federal Rules of Criminal Procedure reads as follows:

> Except as otherwise provided in this rule, an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge or, if a federal magistrate judge is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. 3041. If a person arrested without a warrant is brought before a magistrate judge, a complaint, satisfying the probable cause requirements of Rule 4(a), shall be promptly filed . . .

■ Pursuant to this rule, arrested individuals must be brought before a federal magistrate without "unnecessary delay." In *U.S. v. Forde*, 30 F.3d 127 (1st Cir.1994) (unpublished opinion), the Court explained the Rule 5(a) doctrine as follows:

> In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended detention following a warrantless arrest. In *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Court established that "prompt" generally means within 48 hours of the warrantless arrest. Absent extraordinary circumstances (and intervening weekends do not qualify as such), a longer delay presumptively violates the Fourth Amendment. *Id.* at 57, 111 S.Ct. 1661. In *Powell v. Nevada*, 511 U.S. 79, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994), the Court held that *McLaughlin* applied retroactively to all cases pending on direct review or not yet final. The Court left open the issue of the appropriate remedy for an unreasonable delay in determining probable cause. *Powell v. Nevada*, 114 S.Ct. at 1283–84.

The Government argues that Rule 5(a) applies in very limited circumstances to aliens, specifically when the alien is charged with a non-status offense. Such was the case in *United States v. Sotoj–López*, 603 F.2d 789 (9th Cir.1979), one of the cases cited by defendant to support his argument. In *Sotoj–López*, the Court reversed an alien's conviction for assault on an immigration officer, when the alien was not taken without unnecessary delay before a magistrate for an initial appearance. The Court ruled that 5(a) applied where the defendant was charged with a non-status offense, that is, an offense that did not require the accused to be an alien to the United States. In *United States v. Valente*, 155 F.Supp. 577 (D.Mass.1957), the trial court set aside a verdict after the Government presented evidence of an alien's confession for a felony of false claim of citizenship, when the Government did not secure defendant's appearance before a magistrate, pursuant to Rule 5(a). The *Valente* district court held that the proper remedy pursuant to a Rule 5(a) violation was the suppression of any evidence obtained through unnecessary delay in bringing the alien defendant to a magistrate for initial appearance, not dismissal of the indictment. We note that the Court of Appeals in *Sotoj–López* cited *Valente* as an example where a non-status offense triggers application of Rule 5(a).

■ The Government argues, and this Court agrees, that an offense for illegal entry after deportation is, by definition, a status offense, that is, an offense requiring as one of its elements that defendant be an alien to the United States. On the other hand, an offense such as assault, as in *Sotoj–López*, and false claim of citizenship, as in *Valente*, does not require as an element of the crime that the accused person be an alien to the United States. This distinction seems bolstered by the dual nature of the statute which grants immi-

gration officers the power to arrest without warrants.

It is important to note that the term "unnecessary delay" is included in the statute which authorizes the immigration officers to arrest aliens. 8 U.S.C.A. 1357. The statute reads, in pertinent part:

### 1357. Powers of immigration officers and employees

(a) Powers without warrant

Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;

(2) **to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens,** or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but **the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;**

. . .

(4) **to make arrests for felonies** which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but **the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States;** . . . (Emphasis added)

This statute makes a clear distinction between the procedure to follow pursuant to an alien's arrest for a status offense, such as unlawful entry into the United States, or, as in the present case, where he is being charged for an unlawful re-entry, and an alien's arrest for a felony unrelated to his illegal entry into the United States (also known as a non-status offense). Although sections 1357(a)(2) and 1357(a)(4) both use the term "unnecessary delay", they apply to markedly different scenarios. Section 1357(a)(2) applies to aliens "entering or attempting to enter the United States in violation of laws which regulate the admission, exclusion, expulsion, or removal of aliens." Commentators and the courts have emphasized the civil nature of this section. Pursuant to this section, "an alien arrested under the authority of 8 U.S.C.A. 1357(a)(2) need not be given Miranda warnings, but must be taken **without unnecessary delay** for examination **before an officer of the INS** having authority, to examine aliens as to their right to enter or remain in the United States." 3A American Jurisprudence 2d, *Aliens and Citizens* 149 (1998). See also *Navia–Duran v. INS*, 568 F.2d 803 (1st Cir.1977). (Emphasis ours)

The application of Section 1357(a)(4) is distinctly criminal in nature. The section applies to all persons, whether they are aliens or not, who are arrested for a **felony** cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens. The section incorporates the language of Fed. R.Crim.P. 5(a) when it states: "**the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States.**"

This statute explains the immigration officers' actions in the present case when, upon finding out that defendant En-

carnación had illegally entered the United States, they brought him not before a magistrate or an officer empowered to commit persons charged with offenses against the laws of the United States, but rather before an officer of the Immigration Service, such as Fernando Ruz, who presumably had the authority to examine aliens as to their right to enter or remain in the United States. This action seems to emphasize the distinction that the courts, as well as the immigration officers, make between an illegal entry arrest and a felony arrest unrelated to the detainee's immigration status. The fact that defendant Encarnación's illegal re-entry after a deportation for a prior conviction constituted, upon further investigation by the immigration officers a felony under 8 U.S.C. 1326(b)(2), does not trigger the application of Rule 5(a), since his initial detention was related merely to his unlawful entry, not to a non-status felony offense.

■ Defendant does not raise the issue whether immigration officials took him without unnecessary delay to an officer of the INS for initial examination. In the present case, defendant was interviewed by Senior INS Inspector Fernando Ruz within a day of his initial detention. Accordingly, although we express no opinion on what amount of time constitutes unnecessary delay pursuant to 1357(a)(2), we do not believe that the one-day period in the present case amounts to a violation of 1357(a)(2).

A more thorny issue arises when the immigration officers find that not only has defendant entered the United States illegally, but that he has illegally re-entered after being deported for a prior conviction,

which is the situation in the present case. From the record before us, the immigration officers were first informed on January 24, 1999, the day of his arrest, that he had illegally re-entered after being deported for a prior conviction. Defendant argues that at this point, when the officers realized that it was no longer a mere unlawful entry, but a re-entry which constitutes a felony, Rule 5(a) should apply, and thus the officers should have presented him before a magistrate within 48 hours of discovering that he had committed a felony.[1] However, since Encarnación's initial detention was civil in nature, we decline to apply Rule 5(a) to this case.

The prior cases in which the Court required the officers to comply with Rule 5(a), such as *Sotoj–López, Valente, U.S. v. Osunde*, 638 F.Supp. 171 (N.D.Cal.1986) and *U.S. v. Okuda*, 675 F.Supp. 1552 (D.Hawai'i 1987) involved non-status offenses which were committed in the presence of the officers—such as assault, false claim of citizenship, carrying a false passport or lying on a passport application—which did not require a lengthy investigation and thus posed no obstacle to bringing the detained alien within 48 hours before a magistrate.

The Ninth Circuit has more recently discussed the applicability of Rule 5(a) to detained immigrants accused of illegal re-entry after a previous deportation for a conviction. Although this issue is of first impression within this Circuit, the Ninth Circuit has previously addressed this precise issue. The Court of Appeals for the Ninth Circuit—which encompasses the coastal states of California, Arizona, Ore-

---

1. The statute under which defendant has been indicted reads, in pertinent part:

   **1326  Reentry of removed aliens**

   . . .

   **(b) Criminal penalties for reentry of certain removed aliens**

   Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

   (1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

   (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years or both;

gon, Washington as well as Hawaii and Alaska—has developed an ample body of federal case law related to immigration matters. Accordingly, although they do not constitute precedent within the First Circuit, its interpretations on pertinent immigration issues should be closely examined.

In *U.S. v. Cepeda–Luna*, 989 F.2d 353 (9th Cir.1993), defendant Cepeda–Luna was arrested several times by state authorities on drug charges. While he was awaiting trial on these charges, the INS placed a "detainer" on him. Several months after the INS issued its initial detainer, it issued an order to show cause why Cepeda–Luna should not be subject to civil deportation as an alien convicted of an aggravated felony and controlled substance offenses. Although a deportation hearing was never conducted, the INS detainer remained in effect.

After he was convicted and given two years probation on a drug charge, the INS served Cepeda–Luna with an administrative arrest warrant pursuant to 8 U.S.C. § 1252. He remained in detention for several months, although the INS conducted no further civil deportation proceedings. On September 18, 1991, the INS served upon defendant another deportation arrest warrant. Cepeda Luna was then indicted for illegal reentry on October 18, 1991 and sentenced pursuant to a guilty plea to thirty months imprisonment.

Cepeda–Luna attacked his sentence on two grounds: first, he claimed a Speedy Trial Act violation since more than thirty days elapsed from his civil arrest by INS agents on July 12, 1991, in connection with possible deportation proceedings and his indictment for illegal reentry on October 18, 1991; second, he claimed that he was not brought before a magistrate until three months after service of the arrest warrant in violation of Fed.R.Crim.P. 5(a).

The Court held that Rule 5(a) did not apply to civil deportation arrests. Due to its pertinence, we quote the Court's denial in its entirety:

Appellant's final brief argument that Fed.R.Crim.P. 5(a) mandates dismissal in this case is frivolous. The initial provisions of that rule require a defendant who has been arrested to be brought before a magistrate "without unnecessary delay." Petitioner's only argument is that dismissal for violating this rule has been *contemplated* by the courts, *United States v. Jernigan*, 582 F.2d 1211 ... and he encourages us to dismiss this case because of the '102 day delay in this case.' *Jernigan* 'contemplated' dismissal, however, for delays in a federal *criminal* arrest. We have determined there was no unnecessary delay in processing the criminal aspects of this case. The provisions of Rule 5, which require *inter alia* the appointment of counsel and the holding of preliminary examinations, are inapplicable to civil deportation arrests. We decline to apply Fed.R.Crim.P. 5(a).

In view of this caselaw, we must examine whether defendant Encarnación's initial detention can be classified as a civil detention or whether it was a federal criminal arrest. Although the Government does not specify the statute upon which defendant was initially detained, the conduct of the immigration officers leads this Court to believe that immigration officers acted pursuant to 8 U.S.C. 1357. Section 1357(a)(2), as explained before, grants the immigration officers the power to detain persons suspected of unlawful entry into the United States and to bring them before another immigration officer to determine their status. Since the officers initially detained defendant Encarnación pursuant to 1357(a)(2), and defendant has failed to present evidence showing that he committed a non-status offense, the Court finds that his detention was civil in nature and thus Rule 5(a) does not apply.

Although Encarnación does not argue that his detention should also trigger the 30–day period prescribed by the Speedy Trial Act to bring an indictment against

him, the Government discusses at some length against the applicability of the Speedy Trial Act to defendant. Since the Government's reasoning against the applicability of the Speedy Trial Act and Rule 5(a) is very similar, we shall also address this issue.

In *Cepeda–Luna,* and later in *United States v. Peña–Carrillo,* 46 F.3d 879 (9th Cir.1995), the Ninth Circuit Court of Appeals affirmed the defendants' convictions pursuant to 8 U.S.C. 1326. The *Peña–Carrillo* court noted that "except in cases of collusion between Immigration and Naturalization officials and criminal authorities, where civil detention is merely a ruse to avoid the requirements of the Speedy Trial Act, a civil detention does not trigger the thirty-day clock under the Speedy Trial Act." (citing *United States v. Cepeda–Luna,* 989 F.2d 353 (9th Cir.1993)) *Id.* at 883. Thus, the Court of Appeals unequivocally held that "the Speedy Trial Act is not implicated when a defendant is detained solely on civil charges by the Immigration and Naturalization Service." Id. The fact that the initial civil detention was promptly followed by a criminal charge does not trigger application of the Speedy Trial Act. Id.

■ Pursuant to such caselaw, the Speedy Trial Act does not apply to the present case. The initial detention of Encarnación was civil in nature, pursuant to 8 U.S.C. 1357(a)(2), a civil detention to determine whether he could enter or remain in the United States. Even assuming *arguendo* that Encarnación's initial detention was considered a criminal arrest, there would be no Speedy Trial violation, since the Government returned an indictment seventeen (17) days after his initial detention, well within the thirty-day period prescribed by the Act. Furthermore, there is no evidence that immigration officers colluded with criminal authorities to initially detain defendant for the sole purpose of criminal prosecution.

This court acknowledges that the difference between civil and criminal detentions may appear to be one of form over substance. In practical terms, a civil and criminal detainee will share the same cramped quarters, food and loss of freedom while they are detained, and a simple legalistic euphemism will not substantially change their living conditions. The Ninth Circuit Court of Appeals was also aware of the potential abuses which this situation could produce, and exhorted civil detainees to use the habeas corpus relief provided within the civil deportation statute to prevent such abuses:

> This court is not unsympathetic to the plight of individuals who are unnecessarily detained for extended periods because of federal incompetence or oversight. However, the Speedy Trial Act is not the appropriate remedy for rectifying such violations when they occur in a civil context. Our refusal to apply the provisions of the Speedy Trial Act to civil deportation detentions, however, does not mean that immigration officials possess unfettered discretion to incarcerate deportable aliens. Detainees … may still request relief in federal court from extended deportation detentions by utilizing the habeas corpus proceedings in 8 U.S.C. 1252(a)(1).

*Id.* at 358.

Although Congress recently amended the immigration statute which severely restricts the scope of judicial review on deportation decisions by the Attorney General, the First Circuit has unequivocally held that the habeas corpus remedy is still available in civil detention hearings. It held in *Goncalves v. Reno,* 144 F.3d 110, 121 (1st Cir.1998) that "[i]n enacting AEDPA[2], Congress was concerned about abuses of duplicative judicial remedies, and the elimination of old INA[3] 106(a)(10) served

---

**2.** Antiterrorism and Effective Death Penalty Act.

**3.** Immigration and Naturalization Act.

that congressional purpose. It does not follow from the repeal of this provision of INA that 2241 habeas jurisdiction has been repealed altogether in immigration cases. Had Congress wished to eliminate any possible habeas jurisdiction under 28 U.S.C. 2241, it could easily have inserted an explicit reference, but it did not."

Notwithstanding the availability of habeas relief, the congressional amendments to the immigration statutes underscore the distinctive status of aliens and their limited remedies pursuant to their civil detention. It is clear that aliens do not have the same range of constitutional protection as United States citizens. *See Hermanowski v. Farquharson*, 39 F.Supp.2d 148, 156 (D.R.I.1999) ("As an alien, [petitioner] Hermanowski does not enjoy the full panoply of rights enjoyed by U.S. citizens."); *Hernandez–Rodriguez v. Pasquarell*, 118 F.3d 1034, 1038 (5th Cir.1997) ("The exclusion of aliens is a fundamental act of sovereignty."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309, 94 L.Ed. 317 (1950) ("The right to exclude aliens is vested in the political branches which 'have plenary authority to establish and implement substantive and procedural rules governing the admission of aliens.' ")

Just as the courts have applied less strict Fourth Amendment scrutiny upon border searches by immigration and custom officers, *United States v. Robles,* 45 F.3d 1 (1st Cir.1995), the courts must decline to unreasonably curtail the ability of immigration officers to civilly detain persons entering the United States to determine their immigration status. Furthermore, in the present case defendant Encarnación classifies as an excludable alien, that is, "those aliens who seek admission to this country, but have not secured it." *Hermanowski v. Farquharson*, 39 F.Supp.2d at 156. One district court has noted that "aliens who fall within the definition of this grouping may claim only those procedural due process rights that Congress chooses to grant them ... In contrast, deportable aliens, those who have been ordered deported after having gained admission to the United States, are afforded greater procedural and substantive rights than excludable aliens." *Id.*

Accordingly, as an excludable alien, defendant Encarnación could conceivably, in the future, seek habeas corpus relief to allege that his detention constitutes a "fundamental miscarriage of justice" in violation of his substantive due process or poses a "substantial constitutional problem" that compels his immediate release. *Id.* at 6.[4] For example, courts may intervene upon a determination that the immigration officers have incurred in extraordinary and unjustified delay in transferring aliens to the criminal authorities for prosecution, or have colluded with criminal authorities to place the suspected alien under civil detention as a mere subterfuge to avoid the Speedy Trial Act. See *Cepeda–Luna,* 989 F.2d at 358 and *Peña–Carrillo,* 46 F.3d at 883.

However, in the present case there is no indication that immigration authorities were unreasonably slow in turning over defendant to the criminal authorities. As previously noted, the immigration officers brought Encarnación before a magistrate within seven days of his initial detention,

---

4. Several courts have ordered the release of aliens pending deportation due to the excessive length of detention, notwithstanding the civil nature of their detention. See *Zadvydas v. Caplinger*, 986 F.Supp. 1011 (E.D.La.1997) (court ordered release after 3 years and 9 months of civil detention); *Hermanowski v. Farquharson*, 39 F.Supp.2d 148 (court ordered release after 28 months of civil detention); *but see Tran v. Caplinger*, 847 F.Supp. 469 (W.D.La.1993) (court denied release of alien detained for 22 months).

which seems a reasonable time for the officers to conduct their own independent investigation and confirm whether Encarnación had actually re-entered the country pursuant to a prior deportation.

■ As an additional palliative to the lengthy yet lawful civil detention that may arise from inefficient investigation by immigration officers, defendant may request upon sentencing (if he is convicted or enters a guilty plea) that "any prejudice traceable to the pretrial detention may be mitigated by giving him credit for time served on the INS detainer." See *U.S. v. Cepeda–Luna*, 781 F.Supp. 684, 687 (D.Or. 1991). In that case, the trial court recommended such credit and the government agreed with the trial court's recommendation. *Id.*

In conclusion, defendant's motion to dismiss is denied since Rule 5(a) does not apply to status offenses such as illegal re-entry and Rule 5(a) does not apply to civil detentions pursuant to 8 U.S.C. 1357(a)(2); furthermore, the Speedy Trial Act does not apply to civil detentions pursuant to 8 U.S.C. 1357(a)(2), except in cases of collusion where immigration officers, acting in concert with criminal authorities, detain defendant for an extraordinary length of time to extend his detention until an indictment can be returned. There being no evidence of collusion or extraordinary delay in processing defendant's criminal prosecution, the Speedy Trial exception does not apply in the present case. For the reasons stated below, defendant's motion to dismiss is **DENIED**. (Docket # 16)

SO ORDERED.